NO.  93-054

IN THE SUPREME COURT OF THE STATE OF MONTANA

1993

STATE OF MONTANA,

    Plaintiff and Respondent,

-v-

ROBERT WAYNE EVANS,

    Defendant and Appellant.

FILED

NOV 1 6 1993

*Ed Smith*

CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:  District Court of the Fourth Judicial District,
In and for the County of Ravalli,
The Honorable Jack L. Green, Judge presiding.


COUNSEL OF RECORD:

    For Appellant:

        William F. Hooks, Appellate Defender Office, Helena,
        Montana

    For Respondent:

        Hon. Joseph P. Mazurek, Attorney General, Cregg W.
        Coughlin, Assistant; George Corn, Ravalli County
        Attorney, Hamilton, Montana


Submitted on Briefs:  September 23, 1993

Decided;;, November 16, 1993

Filed:

_____
Clerk

Justice Fred 3. Weber delivered the Opinion of the Court.

Defendant Robert Wayne Evans appeals the verdict from a jury of the Fourth Judicial District Court (now Twenty First Judicial District Court), Ravalli County, convicting him of obstructing justice, a felony. We affirm.

The sole issue for review is whether the District Court abused its discretion in refusing the jury's request to rehear certain portions of trial testimony.

Robert Wayne Evans (Evans) was charged with obstructing justice after he falsely informed police officers that a woman by the name of Jackie Hager (Hager) was not at his residence. On the evening of January 14, 1992, Evans and Hager had gone to a Hamilton bar and had spoken to a man named Claude Mackie at the bar. Claude Mackie had informed Hager that she was wanted by the police for writing bad checks and that a warrant had been issued for her arrest. Evans also learned that Hager was wanted by the police for writing bad checks.

Hager testified that she told Evans she feared she would be apprehended by the police. Evans testified that he informed Hager that he did not want to get involved: nonetheless, Evans and Hager left the bar together and Evans permitted Hager to spend the night at his residence.

On January 15, 1992, the following morning, Detective Johnson of the Hamilton Police Department received information during the course of his investigation that Hager might be at Evans' home. Together with Officer Birkeneder, Detective Johnson went to Evans'

home at approximately 8:30 a.m on January 15, 1992.

Hager testified that when she heard the officers knocking on Evans' door, she knew immediately that it was the police. Hager further testified that she ran to Evans' bedroom and asked him to tell the police that she was not there. When Evans answered the door, the officers informed him that they were looking for Hager in connection with some bad checks she had written and asked him to have Hager come to the door to speak with them.

Evans told the officers that Hager was not there. The officers repeated their request and Evans again denied that Hager was in the house. Detective Johnson asked Evans if the officers could look inside the house; Evans refused this request and told the officers to get a search warrant. The officers then advised Evans that he could be charged with obstructing justice if he was lying to them and asked one more time to have Hager come to the door. Evans restated that Hager was not there and closed the door.

Detective Johnson and Officer Birkeneder left Evans' residence and drove a short distance down the road to a place where Detective Johnson could watch Evans' residence unobserved. officer Birkeneder then left and Detective Johnson called for assistance; Police Chief Auch arrived as Evans and another man got into a red pickup truck and traveled north. Detective Johnson and Police Chief Auch also traveled north and as they were passing Evans' residence, they saw someone walking across the railroad tracks to the west of Evans' residence. Detective Johnson intercepted this person, who turned out to be Hager wearing a large jacket over

3

another jacket with her hair tucked up under a baseball cap.

Detective Johnson arrested Hager and she told him she had been at Evans' home. Evans returned as the officers were placing Hager into the police car but continued to drive past his house. The officers then pursued Evans, stopped him and placed him under arrest. Evans told the officers that he had lied to them because he did not want to get involved. Detective Johnson later traced Hager's footprints in the freshly-fallen snow from the place where he had intercepted her back to Evans' residence. Other evidence indicated that Evans' had planned to meet up with Hager at a Shop-N-Go store and to further assist her in evading the officers.

Did the District Court abuse its discretion in refusing the jury's request to rehear certain portions of trial testimony?

During deliberations, the jury posed several questions to the District Court, including the following request:

> Could we hear the direct testimony of Officer Johnson about what he told Evans "that Jackie was wanted" and Officer Johnson's cross-examination response to the same question.

The District Court refused this request, relying on State v. Harris (1991), 247 Mont. 405, 808 P.2d 453.

The decision to grant or refuse a jury's request to replay testimony is within the sound discretion of the district court. Section 46-16-503(2), MCA. In exercising its discretion, the district court should avoid giving undue emphasis to particular testimony. Harris, 808 P.2d at 459.

Evans claims that the District Court abused its discretion in refusing the request to rehear portions of Detective Johnson's

4

testimony, according to the holding in <u>Harris</u>. In <u>Harris</u>, we held that the district court abused its discretion by allowing the jury to rehear the entire testimony of a witness. Evans contends that the jury's request was for testimony critical to the State's case and was not a request for the entire testimony of Detective Johnson; therefore, he argues that the jury's request should have been granted.

Evans likens the jury's request to a request for a limited response which is permitted under the holding in <u>Harris</u>. Evans claims the request would have garnered the following testimony to be reheard:

> [Prosecutor]: All right. So you got to Mr. Evans' house and you were walking up to the door, and what happened then:
>
> [Detective Johnson]: Well, I rang the doorbell probably a couple times. After a short period of time, Bob Evans came to the door, and I introduced myself to him, and I pointed out to him that I was looking for Jackie Hager in regards to some bad checks that she had written.
>
> [Prosecutor]: What did you tell him about that?
>
> [Detective Johnson]: That's just what I told him. That I needed to talk to her, and I asked him to have her come to the door so I could talk to her.

This question was not asked again on cross-examination. The question on cross-examination was as follows:

> [Mr. Shockley]: . . . When you were conversing with Mr. Evans on the 15th of January, you didn't tell him that Miss Hager was wanted for a felony, did you?
>
> [Detective Johnson]: No, I didn't.

Evans points out that the State had to prove that at the time the police came to the front door, Evans knew that Hager was

5

"liable to be arrested, 'charged, convicted, or punished for a public offense." According to Evans, the request by the jury is specific and critical to that element of proof in that it demonstrated that Evans did not know Hager was an "offender" about to be arrested by the police because the officers did not show him an arrest warrant nor did they specifically state that they were going to arrest Hager.

Section 45-7-303, MCA, provides in pertinent part:

45-7-303. Obstructing justice. (1) For the purpose of this section "an offender" means a person who has been or is liable to be arrested, charged, convicted, or punished for a public offense.
    (2) A person commits the offense of obstructing justice if, knowing a person is an offender, he purposely:
    (a) harbors or conceals an offender; . . .

The legislative enactment of § 46-16-503(2), MCA, changed the common law rule that permitted the trial court no discretion to read a transcript of a witness's testimony or submit testimonial materials to the jury for unsupervised review during jury deliberations. Harris, 808 P.2d at 459. The common law rule was intended to prevent undue emphasis of materials submitted to the jury over all other evidence in the case and still applies in most cases. We stated:

The kind of request contemplated by § 46-16-503(2), MCA, includes an inquiry concerning a witness's testimony as to the width of a street, the height of an object, distance, time or some other limited request, but not the entire testimony of the witness.

Harris, 808 P.2d at 460.

In Harris, we quoted with approval the comments of the Wyoming Supreme Court in Chambers v. State (Wyo. 1986), 726 P.2d 1269,

6

1276, to emphasize that the common law rule would continue to apply in most cases. Although the statute now allows the trial court some discretion in these matters, it still requires the court to discover the exact nature of the jury's difficulty, isolate the particular testimony which can solve the difficulty and then weigh the probative value of the testimony against the danger of undue emphasis. <u>Harris,</u> 808 P.2d at 460. Subsequently, in State v. Mayes (1992), 251 Mont. 358, 374, 825 P.2d 1196, 1206, we emphasized that under the ruling in <u>Harris,</u> the court <u>must</u> avoid undue emphasis on the testimony of certain witnesses. We concluded that replaying the entire testimony of two witnesses unduly emphasized the testimony of the victims "to the exclusion of the testimony of other witnesses." <u>Waves,</u> 825 P.2d at 1206.

In <u>Harris,</u> we also provided guidance for the district courts of Montana in dealing with requests from the jury for witness testimony: we supplied the following response to be used by the courts in responding to such requests:

> It would be error for me to furnish you with a transcript of any particular witness for the reason that in rendering your verdict, you should not give any undue emphasis to the testimony of any one witness to the exclusion of all others. Instead, you should consider all of the evidence as a whole in rendering your verdict.
>
> However, if you have some particular reason or point that you are trying to resolve <u>that relates to the evidence of this witness,</u> you may submit that question to me in written form, and I will give it consideration. (Emphasis added.)

<u>Harris,</u> 808 P.2d at 460.

The request in this case is not a request which relates to the evidence of a single witness: instead, it is a request to rehear

7

testimony on a critical point of proof for which several witnesses provided testimony, including Detective Johnson. It is not the sort of limited request contemplated by § 46-16-503(2), MCA, as it would tend to emphasize the testimony of one witness where several other witnesses have testified on that same point. We conclude that the testimony requested by the jury in this case was testimony that could have placed undue emphasis on the answers given by Detective Johnson which related to a critical element of the State's case.

We hold the District Court did not abuse its discretion when it refused the jury's request to rehear certain portions of the trial testimony given by Detective Johnson.

Affirmed.

_____
Justice

We Concur:

_____
_____
_____
_____
Justices

8