No. 93-618

IN THE SUPREME COURT OF THE STATE OF MONTANA

1994

STATE OF MONTANA,

     Plaintiff and Respondent,

v.

STEVEN HENRICH,

     Defendant and Appellant.

FILED

DEC 08 1994

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:    District Court of the Eighteenth Judicial District,
In and for the County of Gallatin,
The Honorable Thomas Olson, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Anne H. Watson, Watson and Watson,
        Bozeman, Montana

    For Respondent:

        Hon. Joseph P. Mazurek, Attorney General,
        George Schunk, Assistant Attorney General,
        Helena, Montana

        Mike Salvagni, Gallatin County Attorney,
        Gary Balaz, Deputy County Attorney,
        Bozeman, Montana

Submitted on Briefs:   October 28, 1994

Decided:   December 8, 1994

Filed:

Clerk

Justice Terry N. Trieweiler delivered the opinion of the Court.

On April 23, 1993, defendant Steven Henrich was charged by information filed in the District Court for the Eighteenth Judicial District in Gallatin County with endangering the welfare of children, a misdemeanor, in violation of § 45-5-622(2)(a)(i), MCA; sexual intercourse without consent, a felony, in violation of § 45-5-503, MCA; incest, a felony, in violation of § 45-5-507, MCA; two counts of sexual assault, a felony, in violation of § 45-5-502, MCA; and two counts of assault, a misdemeanor, in violation of § 45-5-201(1)(a), MCA. On September 24, 1993, the State filed an amended information amending one count of misdemeanor assault to felony assault in violation of § 45-5-201(3), MCA, and adding additional facts in support of other charges. Following a jury trial which was conducted from September 27-29, 1993, Henrich was convicted of six of the seven offenses charged, sentenced to 22 years in the Montana State Prison, and designated a dangerous offender. Henrich appeals. We affirm in part and reverse in part.

The issues on appeal are rephrased as follows:

1. Did the District Court abuse its discretion when it refused to grant Henrich's motion for a mistrial and motion for a new trial based on a newspaper article about additional charges against Henrich published in the Bozeman Chronicle the day before the case was submitted to the jury?

2. Did the District Court abuse its discretion and did prejudice result when it allowed the jury to listen to a portion of one of the victim's recorded testimony during deliberations?

2

3.   Was there sufficient evidence for the jury to convict Henrich?

4.   Did the District Court abuse its discretion when it allowed a school counselor to testify regarding a complaint made by one of the victims?

5.   Did the District Court err when it concluded that Henrich is a dangerous offender?

6.   Did the District Court err when it sentenced Henrich to the Montana State Prison?

FACTUAL BACKGROUND

Steven Henrich is married to Patricia Henrich.  They are the parents of M.H., born on January 22, 1976, and A.H., born on May 9, 1977.  Both daughters were removed from their parents' home after A.H. complained in February 1992 that Henrich had physically and sexually abused her sister over a period of five years.  At trial, the girls related the following history of abuse prior to their removal.

M.H. testified that in 1987, while the family lived in West Yellowstone, Henrich would occasionally take her to the woods under the pretext that they were going to shoot weapons.  Instead of shooting, M.H. said that Henrich fondled her and had her perform sexual acts for his physical gratification.  This conduct was the basis for one count of felony sexual assault.

After they lived in West Yellowstone, but before they moved to Belgrade, Henrich worked as a chef at Big Sky and lived in the dormitories with M.H.  M.H. testified that while living in the

3

dormitories, Henrich had sexual intercourse with her. She also testified about several different time periods during which Henrich had intercourse with her at other locations from 1988 to 1992. M.H. testified that the sexual acts were a routine that she complied with because she was afraid of Henrich. These acts were the grounds for the charge of sexual intercourse without consent.

M.H. testified that in the fall of 1989, when she was in the eighth grade, she attended a Halloween dance against Henrich's wishes. Upon returning from the dance, M.H. stated that Henrich backhanded her and spanked her with a cribbage board. This conduct was the basis for one count of misdemeanor assault.

M.H. testified that in February 1992, Henrich had her take speed or methamphetamine prescribed for him. This was the basis for the charge that he endangered the welfare of a child.

A.H. alleged that she was also a victim of Henrich's abuse. She testified that in 1991 or 1992 Henrich, on different occasions, backhanded her in the face, kicked her in the stomach, and threw the telephone and electrical tape at her. This conduct was the basis for a second count of misdemeanor assault. Her testimony that he rubbed her crotch and vagina was the basis for the second count of sexual assault.

These allegations of physical and sexual abuse were first revealed when A.H. reported the occurrences to Belgrade school counselors in February of 1992. Following A.H.'s report, she and M.H. were removed from their parents' home.

4

This case was tried from September 27-29, 1993. On September 28, 1993, before the jury began deliberations, the Bozeman Chronicle published two stories about Henrich. One article merely summarized the trial. A second article was shaded and entitled "Man faces pimping charges," and involved additional charges filed against Henrich on September 17, 1993.

The next morning, Judge Thomas A. Olson discussed the articles with both attorneys. Henrich's counsel immediately moved for a mistrial because of the publicity. The court instead questioned each juror individually in chambers to determine if any had read the article. Judge Olson placed paper over the title and sat 10 to 12 feet from the jurors and asked each juror the following series of questions:

1. Did that juror subscribe to the Bozeman Chronicle?

2. Did that juror see the Chronicle the preceding evening?

3. Did that juror see the shaded article or the article next to it about the trial?

4. Did anyone tell that juror about the shaded article or call their attention to it?

5. Did that juror see the television story about the trial on Channel 7 the previous night?

None of the jurors stated that they read or heard about details of the article; nor did any state that they had observed or heard about the details of the television coverage. As a result, the court allowed the trial to continue. Henrich's counsel again objected.

5

As the jury was deliberating, they sent a note requesting to hear M.H.'s testimony, beginning with a specific question the prosecutor asked M.H. The court sent back the note and requested the jury to indicate the extent of the requested testimony. After the jury responded, the court discussed the request with counsel and replayed that portion of the testimony for the jury. The jury continued deliberating and later returned a verdict that Henrich was guilty of six of the seven counts with which he was charged. The court had dismissed the charge of incest following Henrich's motion for a directed verdict.

Finally, after a sentencing hearing during which the court heard testimony from a professional counselor, a psychologist, Henrich, his wife, and others, the court sentenced Henrich to 22 years in prison and designated him a dangerous offender. Henrich claims numerous errors warrant reversal of his convictions. We affirm in part and reverse in part.

## ISSUE 1

Did the District Court abuse its discretion when it refused to grant Henrich's motion for a mistrial and motion for a new trial based on a newspaper article about additional charges against Henrich published in the Bozeman Chronicle the day before the case was submitted to the jury?

Our standard of review from a district court's denial of a motion for mistrial is whether there is clear and convincing evidence that the trial court's ruling was erroneous. *State v. Greytak* (1993), 262 Mont. 401, 404, 865 P.2d 1096, 1098. We review a

6

court's decision to deny a motion for a new trial to determine whether there is a showing of manifest abuse of discretion. *Geiger v. Sherrodd, Inc.* (1993), 262 Mont. 505, 508, 866 P.2d 1106, 1108. Henrich argues that he was denied a fair trial in violation of the Sixth Amendment of the U.S. Constitution and Article II, Section 4, of the Montana Constitution, because of the second newspaper article. The article was entitled "Man Faces Pimping Charges," and discussed charges filed against Henrich on September 17, 1993.

Henrich would have us conclude that the article was prejudicial per se and require a new trial. This case does not involve a situation of continuous and massive pretrial publicity giving rise to due process implications, as in *Estes v. Texas* (1965), 381 U.S. 532, 85 S. Ct, 1628, 14 L. Ed. 2d 543. This case is more analogous to our previous decisions regarding prejudicial news releases during a trial. *See State v. Kirkland* (1979), 184 Mont. 229, 602 P.2d 586; *State v. Weaver* (1981), 195 Mont. 481, 637 P.2d 23.

In *Kirkland*, television broadcasts during the trial labeled the defendant as a hired killer. The district court denied the defendant's motion for a mistrial and admonished the jury to decide the case based on the evidence presented and not to listen to radio or television broadcasts or read newspaper reports. We discussed what action is required of a district court when prejudicial news releases appear during trial and noted that we must determine whether the news releases tainted any of the jurors. *Kirkland*, 602

7

P.2d at 592. We refused to adopt a rule that would require the court to voir dire each juror individually.

We held that the determination of whether a defendant's right to a fair trial had been prejudiced by publicity is within a district court's sound discretion. *Kirkland*, 602 P.2d at 594 (citing *Marshall v. United States* (1959), 360 U.S. 310, 79 S. Ct. 1171, 3 L. Ed. 2d 1250). We reaffirmed this notion in *Weaver*. In *Weaver*, the defendant claimed he was denied a fair trial because of prejudicial newspaper articles. The trial court admonished the jury to rely only on the evidence presented in court and not to read the newspaper. We noted that Montana does not require a district court to individually question jurors regarding publicity, but rather it is within the trial court's discretion to determine whether newspaper articles are prejudicial. *Weaver*, 637 P.2d at 28. We required a defendant to show lack of due process or actual juror partiality. *Weaver*, 637 P.2d at 28-29. We concluded that the court's admonitions were sufficient to cure any possible prejudice. *Weaver*, 637 P.2d at 29.

In this case, Judge Olson admonished the jury not to let any other person talk to them about the trial, and not to read about the case in the newspapers, or listen to radio or television broadcasts about the trial. After the story appeared in the newspaper, Judge Olson individually questioned the jurors to determine the extent to which they were exposed to, or influenced by, the article. They all denied reading the article or knowing of

8

its contents. Nothing in their responses indicates prejudice from the article. To hold otherwise would require the conclusion that the jurors were not truthful when they responded to the court's questions. We have no basis for such a conclusion. Nor has Henrich offered any. We conclude that the District Court did not abuse its discretion by the manner in which it determined whether unfavorable news stories were prejudicial to Henrich and did not err when it denied Henrich's motions for a mistrial and for a new trial.

## ISSUE 2

Did the District Court abuse its discretion and did prejudice result when it allowed the jury to listen to a portion of one of the victim's recorded testimony during deliberations?

Our standard of review of a district court's decision to allow or disallow a jury's request to replay trial testimony is whether the district court abused its discretion. *State v. Evans* (1993), 261 Mont. 508, 511, 862 P.2d 417, 418. Henrich claims that the District Court committed reversible error by allowing a portion of M.H.'s testimony to be replayed for the jury during its deliberations.

Montana statutorily altered the common law rule that did not allow the trial court to reread a transcript of a witness's testimony or to replay recorded testimony during deliberations. Section 46-16-503(2), MCA, provides:

> After the jury has retired for deliberation, if there is any disagreement among the jurors as to the testimony or if the jurors desire to be informed on any

9

point of law arising in the cause, they shall notify the officer appointed to keep them together, who shall then notify the court. The information requested may be given, in the discretion of the court, after consultation with the parties.

The common law rule was designed to prevent undue emphasis being placed on materials given to the jury as opposed to other evidence in the case. We have recognized that this rule still applies in most cases. *Evans*, 862 P.2d at 419.

Recognizing § 46-16-503(2), MCA, and the difficulty of allowing testimony to be replayed, this Court has imposed a stringent requirement upon district courts faced with this issue. We set forth a specific instruction for these circumstances in *State v. Harris* (1991), 247 Mont. 405, 808 P.2d 453, and restated it in *Evans*, 862 P.2d at 419-20. When dealing with requests from the jury about witness testimony, the courts should answer the request with this instruction:

> It would be error for me to furnish you with a transcript of any particular witness for the reason that in rendering your verdict, you should not give any undue emphasis to the testimony of any one witness to the exclusion of all others. Instead, you should consider all of the evidence as a whole in rendering your verdict.
>
> However, if you have some particular reason or point that you are trying to resolve that relates to the evidence of this witness, you may submit that question to me in written form, and I will give it consideration.

*Harris*, 808 P.2d at 460.

In *Harris*, we acknowledged that testimony should be reread to the jury only in limited circumstances contemplated by § 46-16-503(2), MCA. An example would be a witness's testimony

10

regarding basic factual matters like "the width of a street, the height of an object, distance, time or some other limited request, but not the entire testimony of the witness." *Harris*, 808 P.2d at 460.

In this case, Judge Olson ensured that M.H.'s entire testimony was not replayed. He also consulted the jury regarding the extent of the testimony that it was requesting. In spite of these precautions, we conclude that the District Court erred by failing to give the instruction set forth in *Harris*.

However, before a procedural error is a basis for reversal, it must be shown to have been prejudicial. Section 46-20-701, MCA. After listening to that portion of M.H.'s testimony which was replayed for the jury, we conclude that Henrich was not prejudiced by the court's failure to give the *Harris* instruction.

We have previously concluded that it is prejudicial to replay testimony if it would emphasize the testimony of one witness where several other witnesses have testified about the same point. *Evans*, 862 P.2d at 420.

In *Evans*, the defendant was charged with obstructing justice. A critical element was whether the defendant knew the person hiding in his home was an offender. Several witnesses testified to this crucial element, including a detective. The jury requested to rehear part of the detective's testimony, and the court refused the request. We affirmed the district court because replaying the detective's testimony on a critical point of proof about which

11

several witnesses testified would emphasize the detective's testimony over several others. *Evans*, 862 P.2d at 420.

The same concern was not present in this case. There were not numerous witnesses who testified to the acts with which the replayed portion of M.H.'s testimony was concerned. The only witnesses were M.H. and Henrich. The fact that her testimony had to be balanced against Henrich's denial was obvious, and thus, an instruction to that effect was not as critical as it would be under other circumstances which we have considered. We conclude that although the District Court erred by replaying a portion of M.H.'s testimony without first giving the proper instruction to the jury, the record does not demonstrate that the error was prejudicial.

### ISSUE 3

Was there sufficient evidence for the jury to convict Henrich?

The standard of review is whether the evidence viewed in a light most favorable to the State would permit any rational trier of fact to conclude that the elements of the crimes charged were proven beyond a reasonable doubt. *State v. Cates* (1990), 241 Mont. 282, 285, 787 P.2d 319, 321. Henrich argues that the only evidence supporting his conviction was testimony by A.H. and M.H. He claims that their testimony is not credible because they are minors who made inconsistent statements, had a history of making false accusations, and had a motive to fabricate their testimony.

Substantial evidence is evidence that a reasonable mind might accept as sufficient to support a conclusion. *State v. Wilson* (1981),

12

193 Mont. 318, 327, 631 P.2d 1273, 1278. In sex offense cases, including those that involve small children, the victims' testimony need not be corroborated. *State v. Gilpin* (1988), 232 Mont. 56, 70, 756 P.2d 445, 453. The weight and credibility of witnesses is exclusively within the province of the jury. *State v. Urness* (1989), 239 Mont. 58, 60, 778 P.2d 419, 421.

Henrich would have us conclude that A.H.'s and M.H.'s testimony was not credible. However, the previous authorities are based on the notion that jurors are in the best position to draw or reject that conclusion. In this case, they rejected it.

Furthermore, except for the incest charge which was dismissed by directed verdict, and Count 1, Henrich did not allege at the time of trial that the testimony was insufficient to establish the elements of the specific offenses charged. Therefore, that claim was waived for purposes of appeal, except for Count 1, which related to endangerment of a child in violation of § 45-5-622(2)(a)(i), MCA.

Henrich argues that the evidence is insufficient to establish that he was guilty of endangering the welfare of children pursuant to § 45-5-622(2)(a)(i), MCA, by supplying M.H. with an intoxicating substance. An intoxicating substance is a controlled substance as defined in Title 50, Chapter 32, MCA. Methamphetamine, the alleged drug given to M.H., is a controlled substance as defined in § 50-32-224(3)(c), MCA. The jury found Henrich guilty of this

13

offense based solely on M.H.'s testimony that Henrich gave her speed or methamphetamine that was prescribed for him.

We have recognized that it is not necessary to have a suspected intoxicating substance tested by the state crime lab to substantiate a conviction for a drug related offense. *State v. Salois* (1988), 235 Mont. 276, 279, 766 P.2d 1306, 1309. Like other elements of a criminal offense, proof that a drug is an intoxicating substance may be established by circumstantial evidence. *State v. Dunn* (1970), 155 Mont. 319, 472 P.2d 288. To justify a conviction based on circumstantial evidence that a substance is a dangerous drug or intoxicating substance, however, the facts and circumstances must be entirely consistent with guilt and inconsistent with any other rational theory. *State v. Starr* (1983), 204 Mont. 210, 215, 664 P.2d 893, 896 (citing *State v. Stoddard* (1966), 147 Mont. 402, 412 P.2d 827).

In *Dunn*, the defendant gave two teenage girls pills alleged to be LSD. The girls both testified that they hallucinated from the drugs. In addition, a doctor expressed an opinion that the drugs were LSD, or a combination of LSD and an amphetamine, and a parent of one of the girls described her behavior as she hallucinated. *Dunn*, 472 P.2d at 296-97.

However, the circumstantial evidence in this case was not sufficient to establish Henrich was guilty of the charged offense. M.H.'s unqualified opinion is insufficient to establish that the alleged drug was methamphetamine. The State did not introduce a

14

bottle of the pills, any analysis of the pills, or any expert analysis of M.H.'s reaction to the pills. Her testimony that she shook, was wide awake, and that her hair tingled from ingestion of the substance was not supported by other testimony, as in *Dunn*.

We conclude that substantial evidence did not support the jury's conclusion that Henrich gave M.H. methamphetamine. Therefore, his conviction for endangering the welfare of children is reversed.

We conclude that Henrich's other convictions were supported by substantial evidence.

<u>ISSUE 4</u>

Did the District Court abuse its discretion when it allowed a school counselor to testify regarding a complaint made by one of the victims?

Henrich moved for a mistrial based on the admission of hearsay evidence. We will affirm a district court's denial of a motion for mistrial unless there is clear and convincing proof that the district court erred in its ruling. *Greytak*, 865 P.2d at 1098.

Neil Bricco, a Belgrade school counselor, testified about a meeting he had with A.H. on February 28, 1992. At this meeting, A.H. told Bricco about the sexual and physical abuse, including abuse of M.H. The court decided to allow Bricco to testify about what A.H. told him regarding her situation. However, Bricco began to testify that A.H. told him that Henrich sexually abused M.H. Henrich objected to this testimony and requested a mistrial. The

15

court ordered that the testimony of Bricco regarding the abuse of M.H. be stricken, admonished the jury to ignore it, and denied Henrich's motion for a mistrial.

The district court is in the best position to determine the jurors' reaction to inadmissible evidence and to decide whether a mistrial is necessary. *State v. Seaman* (1989), 236 Mont. 466, 475-76, 771 P.2d 950, 956. Here, the court properly ordered the testimony stricken and admonished the jury. In addition, A.H. testified personally that she told Bricco about M.H.'s abuse. Henrich has failed to establish clear and convincing proof that the District Court erred when it denied his motion for a mistrial, or that Bricco's testimony was more harmful than A.H.'s testimony to the same facts in person.

Henrich challenges other aspects of Bricco's testimony. The prosecutor asked Bricco "[h]ow open are children who have been sexually abused to talking about that with a counselor." Henrich objected, stating that Bricco was not qualified to render an opinion on this issue. The court overruled the objection and Bricco responded that the abuse is usually kept within the family. Henrich now argues that Bricco lacked personal knowledge to answer this question, or was not an expert qualified to render an opinion on this issue, and Bricco's testimony improperly bolstered A.H.'s testimony.

We do not decide whether Bricco's testimony is relevant evidence, but only address the issue raised by Henrich's objection,

16

i.e., whether Bricco was qualified or had personal knowledge. Rule 602, M.R.Evid., states:

> A witness may not testify as to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. Evidence to prove personal knowledge may, but need not, consist of the witness' own testimony. This rule is subject to the provisions of Rule 703, relating to opinion testimony by expert witnesses.

Bricco testified that he was a school counselor for seven years. He did not specialize in counseling sexually abused children, but did encounter them while providing general counseling. He stated that he saw hundreds of children in the two years he counseled at Belgrade. Of these children, Bricco stated that about ten percent were sexually abused. He discussed sexual abuse with numerous children. How open children were about sexual abuse was, therefore, a matter of his personal counseling experience. We conclude that Bricco was merely stating a personal observation, and that the District Court did not err when it admitted his testimony.

## ISSUE 5

Did the District Court err when it concluded that Henrich is a dangerous offender?

A district court is required to articulate its reasons for its determination that an offender is a dangerous offender and must do more than merely recite the statutory language. *State v. Morrison* (1993), 257 Mont. 282, 287-88, 848 P.2d 514, 517-18. Henrich argues that the court erred when it determined that he was a dangerous offender for purposes of parole eligibility. Although he

17

cites no case authority, and does not claim that the court failed to articulate its reasons, he asserts several challenges.

Henrich's main argument is that evidence did not support the court's dangerous offender determination. The court shall designate an offender as nondangerous for parole eligibility purposes if the court has determined, based on the presentence report, evidence at trial, and the sentencing hearing, that the offender "does not represent a substantial danger to other persons or society." Section 46-18-404(1), MCA. If the court determines that the offender is dangerous, that determination shall be made part of the sentence imposed and shall be stated in the judgment. Section 46-18-404(3), MCA.

The District Court considered the presentence investigation report, evidence at trial, and the sentencing hearing. Because of the nature and the duration of the abuse, the court found that Henrich was a substantial danger to his daughters. Posing a threat of harm to others is a sufficient basis for designation as a dangerous offender.

Henrich also argues that we should reverse the District Court's dangerous offender designation because he was not given notice before trial in violation of his due process rights. We disposed of a similar argument in *State v. Krantz* (1990), 241 Mont. 501, 788 P.2d 298, *cert. denied* (1990), 498 U.S. 938, where we stated that notice of the sentencing hearing itself is sufficient notice of a

potential dangerous offender designation because the sentencing court is required to consider the issue. *Krantz*, 788 P.2d at 305.

Finally, Henrich asserts that we should reverse the court's dangerous offender finding because there is no proof beyond a reasonable doubt that Henrich is dangerous. Dangerousness is not an element of the offenses charged and need not be proven beyond a reasonable doubt. Rather, the Montana Legislature has decided that the dangerous offender determination is a sentencing factor. *Krantz*, 788 P.2d at 305. We conclude that the District Court articulated sufficient reasons when it determined Henrich was dangerous to other persons, and that his designation as a dangerous offender did not violate Henrich's right to due process.

### ISSUE 6

Did the District Court err when it sentenced Henrich to the Montana State Prison?

Henrich contends that his sentence to the Montana State Prison was contrary to our decision in *State v. Imlay* (1991), 249 Mont. 82, 813 P.2d 979, *cert. dismissed* (1992), 113 S. Ct. 444, 121 L. Ed. 2d 310. In *Imlay*, the defendant's prison sentence for sexual assault was suspended on the condition that he complete a sexual therapy program. The defendant attended sexual therapy programs but refused to admit his guilt, which was a prerequisite to completion of any treatment program. As a result, his suspended sentence was revoked and the defendant was sentenced to prison. In *Imlay*, we held that the defendant was punished for exercising his right

19

against self-incrimination, as protected by the Fifth Amendment, because he was sentenced to prison for refusing to confess to the crime. *Imlay*, 813 P.2d at 985.

Henrich's main challenge stems from a counselor's presentence sexual evaluation that recommended incarceration because Henrich continued to deny his guilt and rehabilitation was unlikely. Henrich objected to the report, claiming it violated rights protected by the Fifth Amendment to the U.S. Constitution, as set forth in *Imlay*.

*Imlay* does not prevent a professional counselor from testifying at the sentencing phase that, in his or her opinion, a defendant ought to be incarcerated. Rather, *Imlay* prevents a sentencing court from incarcerating a defendant for refusing to confess to the crime in order to complete treatment that is a condition of a suspended sentence.

At the sentencing hearing held October 28, 1993, the court indicated it considered Henrich's characteristics, the presentence investigations, criminal record, conduct, and psychological reports. The District Court decided that Henrich's prospects of rehabilitation were slim, that the crimes continued over a significant time period, and that Henrich was dangerous. The court considered other alternatives, but Henrich was sent to prison for punishment because of the severity of his crimes and the slim prospects for rehabilitation, not because he failed to admit his

20

guilt.   Therefore, we conclude that the District Court did not err when it sentenced Henrich to the Montana State Prison.

We affirm in part and reverse in part the judgment of the District Court.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices

21

Justice Karla M. Gray, dissenting.

I concur in the Court's opinion on all issues except issue 2, whether the District Court abused its discretion in allowing the jury to listen to a portion of one of the victim's recorded testimony. On that issue, I agree with most of the Court's analysis, but dissent from its conclusion that no prejudice resulted. As a result, I disagree with the Court's resolution of issue 2.

The portion of M.H.'s testimony which was replayed for the jury was specific to acts of sexual intercourse and sexual abuse between M.H. and Henrich alleged to have occurred in January and February of 1992. The only testimony regarding those acts came from M.H. and Henrich; needless to say, those testimonies were contradictory. Clearly, the jury's determinations regarding the credibility of the witnesses and the weight to be given to the respective and opposite versions of events offered by the State and Henrich were critical factors here.

Under such a circumstance, and given the emotional nature of M.H.'s testimony replayed to the jury, I cannot agree with the Court's conclusion that Henrich was not prejudiced. Under these circumstances, replaying that portion of M.H.'s testimony unduly emphasized the testimony of the victim over that of the accused, to the prejudice of the latter. I conclude that the District Court abused its discretion in allowing the jury to hear again the portion of M.H.'s testimony at issue here.

_____
Justice

22