FILED

January 6 2015

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 12-0783

DA 12-0783

IN THE SUPREME COURT OF THE STATE OF MONTANA

2015 MT 1

STATE OF MONTANA,

      Plaintiff and Appellee,

  v.

CHRISTOPHER DONALD GREENE,

      Defendant and Appellant.

APPEAL FROM:    District Court of the Fourth Judicial District,
In and For the County of Missoula, Cause No. DC-2011-415
Honorable John W. Larson, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

            Wade Zolynski, Chief Appellate Defender, Kristen L. Larson, Assistant Appellate Defender; Helena, Montana

      For Appellee:

            Timothy C. Fox, Montana Attorney General, Tammy A. Hinderman, Assistant Attorney General; Helena, Montana

            Fred Van Valkenburg, Missoula County Attorney, Jason Marks, Deputy County Attorney; Missoula, Montana

Submitted on Briefs:  December 3, 2014
Decided:  January 6, 2015

Filed:

_____
Clerk

Justice Michael E Wheat delivered the Opinion of the Court.

¶1      Christopher Greene appeals from the judgment and sentence of the Montana Fourth Judicial District Court, Missoula County, sentencing him to 100 years in the Montana State Prison, with 60 years suspended, for failure to give notice of change of address by a sexual offender.  We affirm in part, reverse in part, and remand.

## ISSUES

¶2      We review the following issues:

*1. Did Greene receive ineffective assistance of counsel due to his attorney's failure to challenge a prospective juror for cause?*

*2. Did the District Court abuse its discretion by providing the jury with a portion of the trial transcript during deliberation?*

*3. Did the District Court err by imposing an illegal sentence?*

## FACTUAL AND PROCEDURAL BACKGROUND

¶3      In 1994, Greene was convicted of felony sexual assault.  He was committed to the Department of Corrections and the Department of Health and Human Services for 20 years, and he was required to register as a sexual offender upon his release.  Greene was not assigned a sexual offender tier level designation at this time.

¶4      On July 8, 2011, following his discharge from prison, Greene checked into the Ponderosa Lodge in Missoula.  On July 9, 2011, he registered with Missoula County and reported the Ponderosa Lodge as his address.  At that time he also signed a form regarding rules for updating his registered address.

2

¶5 On September 6, 2011, Detective Arianna Adams of the Missoula Police Department attempted to contact Greene. She visited the Ponderosa Lodge, but she learned that Greene had checked out of the Lodge on July 15, 2011. Since Greene had not updated his registered address, a warrant was issued for his arrest.

¶6 On September 8, 2011, Randy Martinez, a Deputy United States Marshal, learned of the warrant and contacted a probation officer familiar with Greene. The probation officer told Martinez of a possible address for Greene. Investigating this address, Martinez found and arrested Greene.

¶7 The State charged Greene with failure to give notice of change of address in September 2011, and the case eventually proceeded to trial before a jury. During voir dire, Greene's counsel told the jury pool about Greene's constitutional right not to testify. She then asked the jurors whether they could "judge the case on the evidence that's presented . . . and not make any assumptions based on whether or not Mr. Greene chooses to testify." Responding to the question, Juror Belanger stated, "I'd have a hard time if he can't explain himself or testify himself and I'd have a -- I'd have a hard time making a decision." Belanger then confirmed that he thought "something to hide is the only explanation to not wanting to get up on the stand and testify." Counsel did not question Belanger further. Ultimately, Greene's counsel passed the jury panel for cause, and then exercised her peremptory challenges. One of these challenges was used to remove Belanger.

¶8 At trial, the State questioned Adams; Martinez; Kristi Sangrey, who maintained Missoula's records for the sex offender registry; and Christopher Birdeau, an employee of the Budget Inn (formerly the Ponderosa Lodge). Adams testified about her efforts to locate

3

Greene in September 2011. Martinez testified about his efforts to locate and arrest Greene. Sangrey testified to Greene's registered address. Birdeau, who was not employed by the Ponderosa Lodge during the dates in question, checked the Ponderosa Lodge's business' records and testified that he found no record of Greene staying there after July 2011. While Greene's counsel cross-examined several of the State's witnesses, she did not cross-examine Adams or present any testimony or evidence on Greene's behalf.

¶9 Before the jury retired for deliberations, the District Court Judge instructed them to submit to him any questions they might have. The Judge stated that while he might not be allowed to answer the questions, he would consider any that were submitted. During deliberations, the jury sent a note to the court, which asked: "Did Detective actually go to the room at the Ponderosa or just check at [the] office[?]" In response, the District Court prepared a partial transcript of Adams' trial testimony. It read:

> Q. (By [the STATE]) How did you go about trying to locate [Greene]?
> A. (DETECTIVE ADRIANNA ADAMS) I checked the state registry and found he was listed as living at the Ponderosa Lodge, 800 East Broadway, number 124.
> Q. Did you go there?
> A. I did.
> Q. Were you able to locate Mr. Greene there?
> A. I was not.
> Q. Did you -- were you able to learn if he was still staying there?
> A. I did.
> Q. What did you learn?
> A. I learned that he had checked in on July 8th, and he had left on July 15th.
> Q. Now at that point, did you know his whereabouts?
> A. I did not at that point.

The District Court also prepared a cover to the transcript that stated: "In response to your question concerning Detective Adams' contact with the Ponderosa Lodge, the Court is

4

attaching the relevant portion of the transcript." Greene objected to providing the jury with the prepared transcript, while the State did not. The District Court overruled Greene's objection and gave the jury the cover sheet and partial transcript. The jury subsequently returned a guilty verdict.

¶10 Following an October 19, 2012 sentencing hearing, the District Court pronounced an oral sentence. It sentenced Greene to 100 years in Montana State Prison, suspending 60 of those years and restricting parole eligibility for 40. It also waived the applicable fines, fees, and public defender fee and designated Greene a tier three sexual offender. On November 7, 2012, the District Court entered a written judgment. It departed from the sentence pronounced in October and ordered Greene to pay fines and fees totaling $980. Greene appeals.

### STANDARDS OF REVIEW

¶11 Claims of ineffective assistance of counsel are mixed questions of law and fact. Therefore, our review is de novo. *State v. Herrman*, 2003 MT 149, ¶ 18, 316 Mont. 198, 70 P.3d 738.

¶12 The decision to provide requested information to a jury is one of discretion. Section 46-16-503(2), MCA; *State v. Evans*, 261 Mont. 508, 511, 862 P.2d 417, 418 (1993). Accordingly, we review such a decision for abuse of discretion. *State v. Crawford*, 2002 MT 117, ¶ 15, 310 Mont. 18, 48 P.3d 706.

¶13 We review a criminal sentence longer than one year for legality. *State v. Holt*, 2011 MT 42, ¶ 7, 359 Mont. 308, 249 P.3d 470.

5

**DISCUSSION**

¶14 *1. Did Greene receive ineffective assistance of counsel due to his attorney's failure to challenge a prospective juror for cause?*

¶15 Greene argues that his counsel should have further questioned or challenged juror Belanger for cause, rather than use a peremptory challenge to dismiss him. Greene contends that this omission constituted ineffective assistance of counsel.

¶16 The United States and Montana Constitutions guarantee criminal defendants the right to effective counsel. U.S. Const. amend VI; Mont. Const. art. II, § 24; *State v. Racz*, 2007 MT 244, ¶ 22, 339 Mont. 218, 168 P.3d 685. We apply the two-pronged test of *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052 (1984) to ineffective assistance of counsel claims. *State v. Chafee*, 2014 MT 226, ¶ 19, 376 Mont. 267, 332 P.3d 240. Under *Strickland*, a defendant must prove (1) that counsel's performance was deficient, and (2) that counsel's deficient performance prejudiced the defense. *Racz*, ¶ 22.

¶17 These are fact-dependent considerations that usually can only be reviewed by reference to a developed record. Accordingly, as a threshold matter when considering ineffective assistance of counsel claims, we must determine whether a direct appeal or a postconviction relief hearing is the more appropriate forum for the claim. *State v. Kougl*, 2004 MT 243, ¶ 14, 323 Mont. 6, 97 P.3d 1095. If we can discern from the record the reason for counsel's allegedly deficient act or omission, we can properly address the claim on direct appeal. If, on the other hand, the record does not disclose the reason, the defendant must raise the claim in a petition for postconviction relief. *Kougl*, ¶ 14. Postconviction relief

6

allows the parties to develop a record and explore the reasons for counsel's act or omission. *See Racz*, ¶ 23.

¶18    We have recognized a narrow exception to this rule when there is "no plausible justification" for counsel's act or omission.  In such cases, the record need not disclose counsel's reasons for the act or omission, and we will review the claim on direct appeal. *Kougl*, ¶ 15.  Greene concedes that the record in this case is silent as to why his attorney failed to challenge Belanger for cause or further question him.  He argues, however, that there was no plausible justification for counsel's failure to do so.

¶19    Greene asserts that counsel "had nothing to lose by following up with Belanger," and he claims that removing Belanger for cause rather than with a peremptory challenge was "clearly to [Greene]'s advantage."  This conclusion, however, is not supported by the record, and it is at odds with this Court's precedent.  In *Herrman*, we were unpersuaded by the same argument that Greene makes here.  *Herrman*, ¶ 31 (addressing Herrman's argument that "there is no tactic that would justify defense counsel removing a potential juror peremptorily where that same person likely could have been successfully challenged 'for cause.'").  As we did in that case, we again recognize that "peremptory challenges involve a very different dynamic than challenges for cause."  *Herrman*, ¶ 31.  Considerations of timing and the reasons for removal, for example, are often different in peremptory challenges than in challenges for cause.  *Herrman*, ¶ 31.  Thus, we hold, as we did in *Herrman*, that without the benefit of a postconviction relief proceeding, we cannot conclude that there was no plausible justification for defense counsel to remove a potential juror peremptorily where the same

7

person might have been successfully challenged for cause. *Herrman*, ¶ 32. Accordingly, we dismiss Greene's ineffective assistance of counsel claim without prejudice.

¶20    *2. Did the District Court abuse its discretion by providing the jury with a portion of the trial transcript during deliberation?*

¶21    Greene argues that the District Court abused its discretion by providing the deliberating jurors with the cover sheet and partial transcript of Adams' testimony. He claims that it placed undue emphasis on Adams' testimony compared with the other testimony and evidence presented at trial.

¶22    At common law, a trial court is not permitted to submit testimonial materials to the jury for their unsupervised review during deliberation. *State v. Harris*, 247 Mont. 405, 416, 808 P.2d 453, 459 (1991). This rule has been modified by the Legislature, however. Section 46-16-503(2), MCA, permits a court to refresh a jury's recollection of trial testimony under certain circumstances. *Harris*, 247 Mont. at 417, 808 P.2d at 459. Specifically, it states:

> After the jury has retired for deliberation, if there is any disagreement among the jurors as to the testimony or if the jurors desire to be informed on any point of law arising in the cause, they shall notify the officer appointed to keep them together, who shall then notify the court. The information requested may be given, in the discretion of the court, after consultation with the parties.

Section 46-16-503(2), MCA. We have decided that this statute does not completely displace the common law rule. Instead, the common law rule continues to prevent jury review of testimony in most cases, while in limited circumstances § 46-16-503(2), MCA, permits district courts, at their discretion, to supply information in response to jury requests. *Evans*, 261 Mont. at 512, 862 P.2d at 419; *Harris*, 247 Mont. at 417-18, 808 P.2d at 460.

8

¶23 We have considered what kinds of materials may be submitted to the jury and in what instances in several cases. In *Harris*, for example, the jury asked to review during deliberations all of the testimony made by the alleged victim. The district court, over the defendant's objection, responded to the request by returning the jury to the courtroom and reading the victim's testimony in its entirety. Deciding that the district court abused the discretion afforded to it by § 46-16-503(2), MCA, we reversed its decision. *Harris*, 247 Mont. at 416-17, 808 P.2d at 459-60. We quoted with approval a Wyoming Supreme Court decision that applied a similar statute. *Harris*, 247 Mont. at 417, 808 P.2d at 460; *Evans*, 261 Mont. at 512, 862 P.2d at 419. The language that we considered to be relevant included:

> [The statute] does not permit trial courts to repeat large amounts of testimony just because the jury makes [a request to do so]. On the contrary, it requires that the court discover the exact nature of the jury's difficulty, isolate the precise testimony which can solve it, and weigh the probative value of the testimony against the danger of undue emphasis. If, after this careful exercise of discretion, the court decides to repeat some testimony for the jury, it can do so in open court . . . or under other strictly controlled procedures of which the parties have been notified. . . . The more testimony the court repeats, the greater danger of undue emphasis. Even with the best of procedures, it would not be proper under the statute for the court to reread a transcript . . . just because the jury wants to review all of the testimonial matter . . . . Undue emphasis and delay would be too likely.

*Harris*, 247 Mont. at 417, 808 P.2d at 460 (quoting *Chambers v. State*, 726 P.2d 1269, 1276 (Wyo. 1986). We also specified that the kind of request contemplated by § 46-16-503(2), MCA, "includes an inquiry concerning a witness's testimony as to the width of a street, the height of an object, distance, time or some other limited request, but not the entire testimony of the witness." *Harris*, 247 Mont. at 417, 808 P.2d at 460.

9

¶24 We subsequently applied *Harris* in our decision in *Evans*. In that case, we affirmed the district court's refusal to comply with a request to hear the direct and cross-examination testimony of a particular witness in response to a particular question. *Evans*, 261 Mont. at 510, 513, 862 P.2d at 418, 420. We noted that the touchstone for a district court in exercising its discretion under § 46-16-503(2), MCA, is whether complying with the jury's request would unduly emphasize the testimony of certain witnesses, relative to the probative value of that testimony. *See Evans*, 261 Mont. at 512-13, 862 P.2d at 419-20. Since the request in *Evans* was not a request that "relate[d] to the evidence of a single witness," and instead was a request "to rehear testimony on a critical point of proof for which several witnesses provided testimony," we decided that the requested testimony "could have placed undue emphasis on the answers given by [the witness] which related to a critical element of the State's case." *Evans*, 261 Mont. at 513, 862 P.2d at 420. Accordingly, we decided that the court did not abuse its discretion by refusing to permit the jury's review of the testimony.

¶25 Here, the District Court did exactly what we determined in *Harris* and *Evans* was required in reviewing a jury's request for information. The court "discover[ed] the exact nature of the jury's difficulty" and "isolate[d] the particular testimony which c[ould] solve the difficulty." *Evans*, 261 Mont. at 512, 862 P.2d at 419; *accord Harris*, 247 Mont. at 417, 808 P.2d at 460. It then supplied that particular testimony, which was limited to the portion of Adams' testimony that addressed the jury's question. Unlike the testimony in *Harris*, the District Court did not include all of Adams' testimony or even a significant portion. And, unlike in both *Harris* and *Evans*, the testimony was limited to the evidence of a single witness, was to a point that only Adams testified on, and was not on a critical point of proof.

10

For these reasons, there was only a small risk of unduly emphasizing Adams' testimony, relative to the probative value of the testimony provided.

¶26     Greene, however, argues that our decision in *Harris* limits courts to responding to jury inquiries only when the inquiry concerns details like "the width of a street, the height of an object, distance, [or] time." *See Harris*, 247 Mont. at 417, 808 P.2d at 460. Yet, while the jury's request in this case for information about whether Adams "actually [went] to the room . . . or just check[ed] at [the] office" is for information arguably different than a width, height, or distance, it is the type of "some other limited request" that we contemplated as being allowed in *Harris*. *Harris*, 247 Mont. at 417, 808 P.2d 460. The testimony provided to the jury in this case was on a specific and limited matter.

¶27     For the foregoing reasons, we hold that the danger of undue emphasis was outweighed by the probative value of the testimony provided to the jury. *Evans*, 261 Mont. at 512, 862 P.2d at 419; *Harris*, 247 Mont at 417, 808 P.2d at 460. For this reason, the District Court did not abuse its discretion by allowing the jury to review the portion of Adams' testimony that it supplied.

¶28     *3. Did the District Court err by imposing an illegal sentence?*

¶29     Greene argues that the District Court erred when it pronounced an oral sentence waiving "fines, fees, and surcharges and the public defender fee" and then ordered Greene to pay fees and fines totaling $980 in its written judgment. We have held that the "oral pronouncement of a criminal sentence in the presence of the defendant is the 'legally effective sentence and valid, final judgment.'" *State v. Johnson*, 2000 MT 290, ¶ 15, 302 Mont. 265, 14 P.3d 480 (quoting *State v. Lane*, 1998 MT 76, ¶ 40, 228 Mont. 286,

11

957 P.2d 9). The State concedes that the written judgment unlawfully increased Greene's sentence and that we should reverse the written judgment. We agree, and we remand for the purpose of correcting the written judgment.

¶30 Greene also argues that failure to give notice of change of address is not a sexual offense and that for this reason the District Court exceeded its authority by imposing a sexual offender tier level designation as part of Greene's sentence. We have held that if an offense is not designated a sexual offense in § 46-23-502(9), MCA, then there is no statutory authority that permits a sentence for the offense to include a sexual offender tier level designation. *State v. Holt*, 2011 MT 42, ¶ 21, 359 Mont. 308, 249 P.3d 470. The State concedes that failure to give notice of change of address is not a sexual offense under § 46-23-502(9), MCA, and that the District Court erred by imposing a sex offender tier level designation. We agree with the parties and remand to the District Court for the purpose of striking the sex offender tier level designation.

## CONCLUSION

¶31 For the foregoing reasons, we dismiss Greene's ineffective assistance of counsel claim, affirm the District Court's decision to provide a portion of Adams' testimony to the jury for their review, and remand to the District Court for the purpose of correcting its written judgment and striking the sex offender tier level designation. We affirm in part, reverse in part, and remand.

/S/ MICHAEL E WHEAT

We Concur:

12

/S/ MIKE McGRATH
/S/ LAURIE McKINNON
/S/ BETH BAKER
/S/ JAMES JEREMIAH SHEA