FILED

11/09/2016

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 14-0753

DA 14-0753

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2016 MT 284

STATE OF MONTANA,

      Plaintiff and Appellee,

v.

BRIAN JOHN TEMPLE,

      Defendant and Appellant.

APPEAL FROM:   District Court of the First Judicial District,
In and For the County of Lewis and Clark, Cause No. DDC 2011-136
Honorable James P. Reynolds, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

            Chad Wright, Chief Appellate Defender, Jennifer Hurley, Assistant
Appellate Defender, Helena, Montana

      For Appellee:

            Timothy C. Fox, Montana Attorney General, Tammy A. Hinderman,
Assistant Attorney General, Helena, Montana

            Leo J. Gallagher, Lewis and Clark County Attorney, Helena, Montana

Submitted on Briefs:  September 21, 2016

Decided:  November 9, 2016

Filed:

                            _____
                                  Clerk

Justice Beth Baker delivered the Opinion of the Court.

¶1 Brian Temple filled a prescription for Oxycodone in April 2011. A month later, police officers discovered Oxycodone residue on a spoon in Temple's possession. The State charged him with criminal possession of dangerous drugs. The trial court instructed the jury that Temple could assert as a defense that he had obtained the Oxycodone pursuant to a valid prescription. The jury asked the court during deliberations whether crushing prescription Oxycodone violated the law. The court declined to answer and referred the jury to the original instructions. The jury found Temple guilty. He appeals the trial court's refusal to further instruct the jury.

¶2 We affirm.

## PROCEDURAL AND FACTUAL BACKGROUND

¶3 On April 2, 2011, Temple arrived at the emergency department of St. Peter's Hospital complaining of back pain. A doctor prescribed Temple Oxycodone. Temple filled the prescription that day at a CVS pharmacy. Although the record does not include a copy of the prescription, it does include a prescription receipt, which states that the prescription included an eight-day supply of pills. The receipt includes the instruction, "Take 1 tablet by mouth every 4 hours as needed for pain."

¶4 A month later, law enforcement officers conducted a probation search of Temple's vehicle. The search uncovered a spoon, a tourniquet, a pill crusher, and a syringe. The officers sent a sample of residue from the spoon to the State Crime Laboratory for

chemical analysis. In the meantime, the State charged Temple with criminal possession of drug paraphernalia.

¶5 In September 2011, the State Crime Laboratory identified the residue found on the spoon in Temple's vehicle as Oxycodone. The State subsequently amended its charges against Temple to include felony criminal possession of dangerous drugs (Oxycodone).

¶6 At trial, Temple admitted to possessing drug paraphernalia and Oxycodone. He asserted as a defense, however, that he possessed the Oxycodone lawfully because he obtained it by prescription. At the close of trial, the District Court instructed the jury on the elements of criminal possession of dangerous drugs and on Temple's asserted defense that he obtained the Oxycodone "pursuant to" a valid prescription.

¶7 Neither party had proposed an instruction on the legality of crushing prescription Oxycodone, and the court gave no such instruction in its initial charge to the jury. But during deliberations, the jury sent a note with the following questions: (1) "According to the law, when you alter the form of a prescription drug . . . by either applying heat or crushing, does that change the chemical compound of the drug?"; and (2) "If so, does that chemical change make it illegal?" The court responded with the statement, "You are instructed to rely on your collective memory of the testimony and evidence presented."

¶8 The jury sent another note, asking, "Is it illegal to crush Schedule II Oxycodone?" Temple's counsel urged the court to answer "no," arguing that the relevant statutes did not criminalize such conduct. The court acknowledged that the legality of crushing Oxycodone was "obviously . . . tying [the jury] up." Nonetheless, the court responded to

3

the jury, "You are instructed to rely on your collective memory of the testimony and evidence presented and on the instructions previously given." The jury found Temple guilty of criminal possession of dangerous drugs.

¶9 Temple argues that the District Court abused its discretion in refusing to further instruct the jury on the legality of crushing prescription Oxycodone.

## STANDARDS OF REVIEW

¶10 A district court's decision to provide or deny requested information to a jury during deliberations is one of discretion. Section 46-16-503(2), MCA; *State v. Greene*, 2015 MT 1, ¶ 12, 378 Mont. 1, 340 P.3d 551. We review such a decision for abuse of discretion. *Greene*, ¶ 12. When the jury instructions in a criminal case, as a whole, fully and fairly instruct the jury on the law applicable to the case, a district court does not abuse its discretion by refusing to further instruct the jury. *State v. Bieber*, 2007 MT 262, ¶ 67, 339 Mont. 309, 170 P.3d 444.

## DISCUSSION

¶11 *Whether the District Court abused its discretion when it declined to further instruct the jury in response to the jury's questions.*

¶12 Temple argues that the District Court abused its discretion when it failed to answer the jury's questions about the legality of crushing Oxycodone. In his view, the law does not criminalize crushing validly prescribed medication or otherwise failing to follow a prescription's instructions. Temple contends that the original instructions did not adequately inform the jury on this critical point of law. As such, Temple maintains that

4

the court was obligated to clarify for the jury, in response to its questions, that crushing Oxycodone did not violate the law.

¶13 The State counters that crushing and injecting prescription medication contrary to the prescription's instructions for use violates the law. It asserts that a person lawfully possesses a dangerous drug only if he obtains the drug pursuant to a prescription and continually possesses it "in accordance with the prescription's instructions and for the purpose for which the drug was prescribed." The State contends also that the District Court acted within the bounds of its broad discretion when it declined to answer the jury's questions.

¶14 Montana law criminalizes possession of "dangerous drugs," including Oxycodone. Sections 45-9-102(1), 50-32-101(6), -224(1)(a)(xvi), MCA. "Ultimate users and practitioners," however, are "exempt" from the criminal possession statute. Section 45-9-102(8), MCA. The law defines an "ultimate user" as "a person who lawfully possesses a dangerous drug for personal use." Section 50-32-101(28), MCA. "[A]n ultimate user or a person in possession of any dangerous drug pursuant to a lawful order of a practitioner" may "lawfully possess" such dangerous drug. Section 50-32-302(3), MCA. The relevant statutes do not specifically address whether crushing validly prescribed medication or otherwise failing to follow a prescription's instructions violates the law or bars a defendant from asserting the "ultimate user" defense. *See generally* §§ 45-9-101 to -132, 50-32-101(28), -302(3), MCA.

5

¶15 The District Court gave the following instruction to the jury regarding Temple's asserted defense to the possession of dangerous drugs charge:

> An ultimate user of a dangerous drug may possess it lawfully.
>
> An ultimate user means a person who lawfully possesses a dangerous drug under a valid prescription.
>
> A prescription means any order given individually for the person for whom prescribed by means of an order signed by the prescriber.
>
> *To rebut the assertion that Defendant was in criminal possession of dangerous drugs, Defendant may raise the defense that he obtained the drug alleged in the charge pursuant to a valid prescription.*
>
> If, after considering all the evidence, you have a reasonable doubt whether Defendant was in unlawful possession of Oxycodone, you must find Defendant not guilty of the charge.

(Emphasis added.) Temple did not object to this instruction. The instruction fairly captures the language of the statutes defining the terms applicable to Temple's claimed defense. *See* §§ 45-9-102(8), 50-32-101(25), -302(3), MCA.

¶16 The State argues that crushing and injecting a prescription medication or otherwise failing to abide by the prescription's instructions for use violates the law because possession is lawful only if the "ultimate user" uses the drug "pursuant to" a valid prescription—by following the prescription's instructions and using the drug for the purpose for which it was prescribed. The instruction the State proposed to define "ultimate user" and "prescription" did not directly explain this theory, although it did include additional language from the statutes. The District Court declined the State's instruction as proposed, and its refusal is not an issue on appeal.

6

¶17 The trial court charged the jury on the elements of the crime charged and on Temple's "ultimate user" defense using the language of the controlling statutes. The relevant statutes do not speak directly to the issue the jury raised during deliberations. *See generally* §§ 45-9-101 to -132, 50-32-101(28), -302(3), MCA. The District Court was obligated to instruct the jury only as to "the law applicable to the case," *Bieber*, ¶ 67, not as to a legal question on which the parties had not been heard prior to the jury's retiring to deliberate and on which the law presented no clear answer. There is no abuse of discretion if, as a whole, the instructions fairly and fully covered the applicable law. *Bieber*, ¶ 67.

¶18 The outcome of this case hinged on the jury's determination of whether the Oxycodone found in Temple's possession in May 2011 was obtained "pursuant to" his April 2, 2011 prescription. Section 50-32-302(3), MCA. We conclude that the court's initial instructions on the "ultimate user" defense, using the phrases "under a valid prescription" and "pursuant to a valid prescription," fulfilled its obligation to "fully and fairly instruct the jury on the law applicable to the case." *Bieber*, ¶ 67. Its decision to refer the jury back to the instructions in response to the jury's questions did not constitute an abuse of discretion. *See Bieber*, ¶ 67.

## CONCLUSION

¶19 The judgment is affirmed.

/S/ BETH BAKER

7

We concur:


/S/ MIKE McGRATH
/S/ MICHAEL E WHEAT
/S/ PATRICIA COTTER
/S/ JIM RICE