No. 04-838

IN THE SUPREME COURT OF THE STATE OF MONTANA

2006 MT 6

STATE OF MONTANA,

        Plaintiff and Respondent,

  v.

GEORGE HIGH ELK,

        Defendant  and Appellant.

APPEAL FROM:    District Court of the Fourth Judicial District,
                      In and For the County of Missoula, Cause No. DC 03B199
                      Honorable John W. Larson, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

                Teresa M. Thompson, Attorney at Law, Missoula, Montana

        For Respondent:

                Hon. Mike McGrath, Attorney General; Mark W. Mattioli,
                Assistant Attorney General, Helena, Montana

                Fred Van Valkenburg, Missoula County Attorney; Suzy Boylan-Moore,
                Deputy County Attorney, Missoula, Montana

                      Submitted on Briefs:  November 29, 2005

                              Decided:  January 10, 2006

Filed:

_____
                           Clerk

Chief Justice Karla M. Gray delivered the Opinion of the Court.

¶1 A jury in the Fourth Judicial District Court, Missoula County, found George High Elk guilty of accountability for felony assault with a weapon. High Elk appeals from the judgment entered against him. We affirm.

¶2 We address the following issues:

¶3 1. Was the District Court's instruction to disregard hearsay referenced in the prosecution's opening statement sufficient to cure the error?

¶4 2. Did the District Court abuse its discretion when it denied High Elk's motion for a directed verdict?

¶5 3. Did the District Court abuse its discretion when it admitted photographs of the alleged stab wounds into evidence?

BACKGROUND

¶6 The State of Montana charged High Elk with accountability for assault with a weapon. The Information alleged High Elk committed the offense on or about May 1, 2003, by holding Lynn Allen's arms and/or punching him while Charlotte Rodarte stabbed him.

¶7 The State's first two witnesses at trial responded to Allen's calls for help from the hallway of their apartment building on the night of May 1, 2003. The first witness testified he was awakened by Allen's shouting, and opened his apartment door to find Allen standing in the hall with blood running down his arms and dripping off the tips of his fingers. The witness called 911. The State's second witness--a roommate of the first--testified he helped

2

Allen staunch the blood flow from what appeared to be puncture wounds until an ambulance arrived to transport Allen to a hospital.

¶8　　Allen testified next. He told the jury that, on the evening of May 1, 2003, he, Carrie Diggins, George High Elk and Charlotte Rodarte went to a bar in Missoula, Montana, for "a few drinks." Near the end of the evening, Allen was cited for disorderly conduct in the bar parking lot. Afterward, he and Diggins were sitting in her car in the parking lot, "talking or whatever," when High Elk came out of the bar, accused Allen of being involved with the arrest of High Elk's cousin earlier that night, and challenged Allen to a fight. Allen testified that High Elk stood outside the open passenger-side door of the car and began punching him. He testified he could not get out of the car because of the force of High Elk's blows. Allen further testified that, at the same time, Rodarte was in the back seat "poking at" him from behind with what he then thought was her finger or a pen. According to Allen, after High Elk stopped punching him, High Elk asked Rodarte, "Did you get him?"

¶9　　Allen further testified that he remained in the car because he did not realize the seriousness of his injuries and he hoped they would "talk it over" and "work [it] out." According to Allen, the foursome left the parking lot to avoid police officers whom they anticipated would be returning soon. Allen realized Rodarte had stabbed him when he felt his shirt sticking to the car seat and to his skin as a result of being wet with his blood. He testified Diggins stopped the car, and he got out and ran to a nearby apartment building for help. The stab wounds to his chest, back, neck and shoulder required twelve stitches.

¶10　　Diggins also testified at trial. According to her, High Elk and Rodarte did not punch

3

and stab Allen until after the foursome had left the bar parking lot in her car. She testified she was driving, Allen was in the front passenger seat and Rodarte and High Elk were in the back seat. High Elk and Allen argued loudly as they drove away from the parking lot, and she stopped the car and told them all to get out. High Elk got out and, standing outside the open door to the front passenger seat, began punching Allen and blocking his exit from the vehicle. Diggins testified that she got out of the car and pulled High Elk back from punching Allen, then saw Rodarte lean forward from the back seat and--she thought--hit Allen several times. Diggins said Allen then got out of the car and fled, and she and High Elk got back into the car with Rodarte. After she drove away, Diggins noticed blood on her car seat. She testified that High Elk did not say anything and that Rodarte's reaction was "disbelief. Scared. Kind of like being sorry. Like she was sorry." Diggins, Rodarte and High Elk were later apprehended at Diggins' house.

¶11    Two police officers testified. One stated he was dispatched to the apartment building in response to the 911 call. In connection with his testimony, the court admitted four photographs of Allen's stab wounds taken at the hospital into evidence over objection. The other police officer testified that he joined the investigation the next morning, at which time he observed blood in Diggins' car and heard Diggins' description of the assault.

¶12    The jury found High Elk guilty of accountability for felony assault with a weapon, based on Rodarte's actions. The District Court sentenced him and entered judgment. High Elk appeals.

## ISSUE 1

¶13     Was the District Court's instruction to disregard hearsay referenced in the State's opening statement sufficient to cure the error?

¶14     In her opening statement, the prosecutor told jurors they would hear evidence that, after High Elk punched Allen and Rodarte stabbed him, High Elk asked Rodarte, "Did you get him?" and she replied, "Yeah, I got him." High Elk's counsel objected that hearsay could not be quoted, and the District Court sustained the objection and instructed the jury to disregard the statement. High Elk did not move for a mistrial.

¶15     At the outset, we note the State's observation that High Elk's objection and the court's ruling could refer only to Rodarte's response, in that High Elk's question to Rodarte was not hearsay, because it was a party's own statement. *See* Rule 801(d)(2), M.R.Evid. High Elk does not dispute the State's observation.

¶16     High Elk argues we should reverse his conviction because "the hearsay evidence [of Rodarte's response to High Elk's question] was prejudicial and contributed to the verdict." He relies on *State v. Runs Above*, 2003 MT 181, ¶ 25, 316 Mont. 421, ¶ 25, 73 P.3d 161, ¶ 25; and *State v. Van Kirk*, 2001 MT 184, ¶ 47, 306 Mont. 215, ¶ 47, 32 P.3d 735, ¶ 47. In doing so, he misstates the matter before us. In both cited cases, the standard of review which he advances was used in relation to improperly admitted hearsay *evidence*. *Runs Above*, ¶ 23; *Van Kirk*, ¶ 26. What occurred here was not error in admitting evidence, but an improper reference in the prosecutor's opening statement to a hearsay statement by Rodarte, who did not testify at High Elk's trial.

¶17     A lawyer's statements are not evidence. *See, e.g., State v. Kougl*, 2004 MT 243, ¶ 26,

323 Mont. 6, ¶ 26, 97 P.3d 1095, ¶ 26 (citation omitted). The jury was so instructed at the beginning of the trial, before opening statements began. Issues surrounding improper comments by counsel generally have arisen in the context of motions for mistrial, the denial of which we review for an abuse of discretion. *See, e.g., State v. Ahto*, 1998 MT 200, ¶ 32, 290 Mont. 338, ¶ 32, 965 P.2d 240, ¶ 32 (citation omitted). As stated above, High Elk did not move for a mistrial in the present case, and it would be inappropriate to apply the abuse of discretion standard to an action (or lack thereof) High Elk never requested the District Court to take.

¶18 After High Elk's counsel objected to the State's quote of Rodarte, the court immediately instructed the jury to disregard counsel's statement. The State's erroneous four-word reference at the very beginning of a trial, immediately instructed upon, was followed by testimony from six witnesses. The jury heard considerable independent evidence--indeed, it was undisputed--that Rodarte had stabbed Allen repeatedly. Any prejudice to High Elk came from his question to Rodarte--"Did you get him?"--which was properly referenced during the prosecution's opening statement and properly admitted, without objection, through Allen's testimony.

¶19 Under the circumstances presented here, we conclude the District Court's instruction that the jury disregard the prosecutor's quoting of hearsay from Rodarte in her opening statement was sufficient to cure the error.

ISSUE 2

¶20 Did the District Court abuse its discretion when it denied High Elk's motion for a

6

directed verdict?

¶21    At the end of the State's presentation of its case, High Elk moved for a directed verdict on grounds that the State had not presented sufficient evidence to allow the jury to find, beyond a reasonable doubt, the elements of accountability for assault with a weapon.  The District Court denied the motion.

¶22    We review a district court's denial of a motion for directed verdict to determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt.  We will not reverse the decision of the district court absent an abuse of discretion. *State v. Landis*, 2002 MT 45, ¶ 23, 308 Mont. 354, ¶ 23, 43 P.3d 298, ¶ 23 (citations omitted).

¶23    Relying primarily on the same cases as he did in Issue 1, High Elk argues that, after excluding the "improper hearsay," no rational trier of fact could have found the State proved its case beyond a reasonable doubt.  As discussed above, however, the issue before us does not relate to inadmissible hearsay evidence.  Thus, this portion of High Elk's argument is irrelevant.

¶24    High Elk also argues, briefly, that the accountability statute requires that he understood what Rodarte was doing and acted in concert with her for purposes of committing the offense, and that the testimony of the witnesses fails to establish that he did so.  We disagree.

¶25    A person is legally accountable for the conduct of another when, either before or

during the commission of the offense, and with the purpose to promote or facilitate such commission, he solicits, aids, abets, agrees or attempts to aid another person in the planning or commission of the offense. Section 45-2-302(3), MCA. A person commits the offense of assault with a weapon if the person purposely or knowingly causes bodily injury to another with a weapon. Section 45-5-213(1)(a), MCA.

¶26 Here, High Elk was charged with accountability for Rodarte's assault of Allen with a weapon. The testimony that Rodarte assaulted Allen was undisputed at trial. The jury heard evidence that High Elk was angry with Allen because he believed Allen had been involved in the arrest of High Elks' cousin earlier that night. The jury heard evidence that High Elk argued with Allen, then punched Allen and prevented him from exiting Diggins' vehicle while or just before Rodarte stabbed him from the back seat of the car. The jury heard evidence that High Elk then asked Rodarte, "Did you get him?"

¶27 On this record, we conclude a rational trier of fact could have found High Elk guilty, beyond a reasonable doubt, of the elements of accountability for felony assault with a weapon. Therefore, we hold the District Court did not abuse its discretion in denying High Elk's motion for a directed verdict.

ISSUE 3

¶28 Did the District Court abuse its discretion when it admitted photographs of the alleged stab wounds into evidence?

¶29 High Elk objected to the admission of the photographs of Allen's wounds because the officer during whose testimony they were admitted did not testify that he took the

photographs or when he viewed the wounds. The District Court asked for additional foundation and the prosecutor elicited the officer's testimony that he observed Allen's wounds when he first arrived at the apartment building and when medical personnel were treating Allen, both at the scene and at the hospital. The court then overruled the objection and admitted the photographs into evidence.

¶30    Whether adequate foundation supports the admission of evidence is within the sound discretion of the trial court. Therefore, we review a trial court's determination for abuse of discretion. *See State v. Delaney*, 1999 MT 317, ¶ 14, 297 Mont. 263, ¶ 14, 991 P.2d 461, ¶14 (citation omitted).

¶31    High Elk argues generally that the State provided inadequate foundation for admission of the photographs. In particular, he contends the State failed to offer evidence of when, where and by whom the photographs were taken, and failed to produce a witness who could "vouch for the details" contained in the photographs. Without discussion or analysis, High Elk advances Rule 901, M.R.Evid., and *State v. Newman* (1973), 162 Mont. 450, 513 P.2d 258, for the proposition that absent a foundation, the District Court should have refused to admit the photographs.

¶32    Rule 901, M.R.Evid., requires authentication or identification of certain evidence as a condition precedent to admissibility. The requirement "is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Rule 901(a), M.R.Evid. Authentication or identification may be accomplished by a witness' testimony that a matter is what it is claimed to be. Rule 901(b)(1), M.R.Evid.

¶33     In *Newman*, we held that photographs of a homicide victim's embalmed body were not properly admitted into evidence "because there was no proper showing . . . to establish the substantial necessity or instructive value of the photographs as a foundation for their admissibility." *Newman*, 162 Mont. at 461, 513 P.2d at 264.  High Elk's reliance on *Newman* for the fundamental notion that a foundation is required for admission of the photographs is correct.  *Newman* involved an entirely different issue than the foundation issue High Elk raises here, however, so it is not applicable to the facts of this case.

¶34     High Elk has advanced no authority requiring that the photographer testify.  In addition, we have held--albeit before adopting Montana's current rules of evidence--that a photograph may be proved to be a correct representation by a witness other than the person who took the photograph.  *See Pilgeram v. Haas* (1946), 118 Mont. 431, 449, 167 P.2d 339, 348 (citations omitted).

¶35     In the present case, the police officer testified the photographs offered and admitted into evidence were taken shortly after he and Allen arrived at the hospital, and that they were true and accurate depictions of the wounds he observed on Allen.  His testimony was sufficient to authenticate the photographs.  We hold that the District Court did not abuse its discretion by admitting the photographs into evidence.

¶36     Affirmed.

                                                            /S/ KARLA M. GRAY


We concur:

10

/S/ PATRICIA O. COTTER
/S/ JOHN WARNER
/S/ W. WILLIAM LEAPHART
/S/ BRIAN MORRIS