FILED

June 7 2016

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 15-0254

DA 15-0254

IN THE SUPREME COURT OF THE STATE OF MONTANA

2016 MT 138

STATE OF MONTANA,

      Plaintiff and Appellee,

  v.

JEFFRY THOMAS WEBER,

      Defendant and Appellant.

APPEAL FROM:    District Court of the Seventh Judicial District,
In and For the County of Richland, Cause No. DC-14-33
Honorable Katherine M. Bidegaray, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Nick K. Brooke, Smith & Stephens, P.C., Missoula, Montana

      For Appellee:

          Timothy C. Fox, Montana Attorney General, Jonathan M. Krauss,
Assistant Attorney General, Helena, Montana

          Mike Weber, Richland County Attorney, Janet P. Christoffersen,
Deputy County Attorney, Sidney, Montana

          Submitted on Briefs:  February 24, 2016

                        Decided:  June 7, 2016

Filed:

_____
Clerk

Justice Mike Wheat delivered the Opinion of the Court.

¶1     Jeffry Thomas Weber appeals from a jury verdict convicting him of felony theft, evidentiary rulings at trial, and denial of his motion for new trial from the Montana Seventh Judicial District Court, Richland County.  We reverse and remand for a new trial.

## ISSUES

¶2     Appellant raises several issues on appeal which we address as follows:

*1. Whether the District Court abused its discretion by refusing to admit the inventory list offered by defense counsel.*

*2. Whether the District Court abused its discretion by limiting defense counsel's examination of defense investigator Peck.*

*3. Whether defense counsel rendered ineffective assistance of counsel by failing to admit the evidence.*

## FACTUAL AND PROCEDURAL BACKGROUND

¶3     Weber was a janitor at Sidney High School.  A Thermal Dynamics Cutmaster 82 plasma cutter, a tool used to cut metal and steel, went missing from the high school shop classroom on a night Weber was working.  The high school principal later identified Weber as the person on surveillance video in the shop the night the plasma cutter disappeared.  After an investigation, the State charged Weber by information with theft of property in excess of $1,500 for stealing the plasma cutter from the high school.

¶4     Weber's jury trial began on September 4, 2014; counsel from the Office of the State Public Defender represented him at trial.  Trial counsel's defense strategy was a general denial that Weber had taken the plasma cutter, coupled with an attempt to show

that the plasma cutter was worth less than $1,500, which would reduce Weber's conviction to a misdemeanor under § 45-6-301(8)(a), MCA. The issues on appeal surround the valuation of the plasma cutter by the prosecution and Weber's counsel's efforts to establish the defense valuation of the plasma cutter.

¶5 At trial, the State used three witnesses to introduce evidence regarding the value of the plasma cutter—the Sidney High School principal, Sue Anderson, the high school shop teacher, Mark Fulgham, and Sergeant Travis Rosaaen from the Sidney Police Department. Fulgham was in his third week as the shop teacher at the time the theft occurred and he undertook the replacement of the missing plasma cutter. Fulgham testified that the stolen plasma cutter was in "very useable" condition but did not know the year it was manufactured. Fulgham testified that he purchased a new plasma cutter for the school after researching the value and seeking quotes. The State was able to show through Rosaaen and Fulgham that the school paid $2,100 for the new equipment.

¶6 On cross-examination of Fulgham, Weber's counsel attempted to introduce an inventory spreadsheet as evidence. The inventory list was created and maintained by the prior high school shop teacher at Sidney High School, Mr. Schaff, and was produced by the State in discovery. The list is an inventory dated May 2011 marked "Schaff, Ag.Ed Dept.," and contains line items for "Welding" and "Wood working" equipment. On the list is "Plasma Cutter #82 & #52, Cutmaster, Thermal Dynamics 2009, [quantity] 2, and [price] $1,500, [for a total of] $3,000." Weber's counsel wanted to admit the inventory list as evidence that the plasma cutter was not new, but was instead acquired some years earlier, and to show that the plasma cutter's value had declined from the "new" price.

3

Weber's counsel tried to establish through Fulgham that the inventory listed shop equipment, values, and the dates when the equipment was acquired, but the State's hearsay and foundation objections limited this testimony. The objections arose because Fulgham was not the author of the list, a fact that was not discovered by Weber's counsel until the day of the trial. Counsel attempted to introduce the inventory list into evidence through Fulgham, but the State objected for lack of foundation because Fulgham could not verify that the plasma cutter listed on the exhibit was the same plasma cutter stolen from the school. The court sustained the objection. Weber's counsel sought admission on the basis that the State produced the list in discovery, and the court further sustained objections to its introduction.

¶7 When the court rejected the evidence, Weber's counsel attempted to lay proper foundation. The District Court made several suggestions to aid counsel in his struggle:

> COURT: Maybe it's premature, you can ask more questions, possibly, to lay foundation[.]

> COURT: [I]f [the witness] recognizes things on it [the inventory sheet] and has knowledge, he may be able to talk about it, so overruled at this point. You may ask more foundation.

> COURT: This witness can't attest that this [the cutter] is the same one. You're going to have to ask some other questions, maybe, that relate to how replacing it was done.

After several attempts, Weber's counsel gave up trying to get the inventory list into evidence and ended the examination of Fulgham. Ultimately, counsel was unable to get the list into evidence.

¶8     Weber's counsel called the Office of Public Defender investigator, Richard Peck, as a witness in the defense case. Through Peck, counsel attempted to show a lesser value of the plasma cutter by offering sale price evidence for new plasma cutters from internet searches and contrast that with the alleged age and lesser value of the 2009 plasma cutter at the school shop. Peck testified that the plasma cutter was a "Thermal Dynamics Cutmaster 82 Plasma Cutter" and Weber's counsel tried to elicit testimony that it was a 2009 model based on the inventory list. The State objected for lack of foundation and the court sustained. However, Peck did testify that based on the State's discovery, it appeared the plasma cutter was not new. Peck testified that he had searched for images of the equipment online and the State objected but the court overruled to allow the testimony. At that point, Peck described the plasma cutter and then counsel stopped and did not question Peck any further regarding its value. In the end, Weber's counsel did not successfully introduce evidence that could support his theory of reduced value of the plasma cutter (other than the fact it was not new) that could reduce Weber's felony charge to a misdemeanor.

¶9     At closing, Weber's counsel argued that "there was a rush to judgment as to whether or not [the plasma cutter] was worth $1,500 or more." He reminded the jury that witnesses had acknowledged the plasma cutter was not new and suggested that its value was lower than new because "equipment depreciates rapidly when it's being used." Weber's counsel was not able to establish a specific value and relied upon his own representations that replacement cost was not the correct basis for determining the value

5

of the plasma cutter. The jury found Weber guilty of felony theft and determined the plasma cutter value exceeded $1,500.

¶10 Weber moved for a new trial on grounds that the inventory list was improperly excluded at trial. After a hearing, the District Court denied that motion and sentenced Weber to four years imprisonment, all deferred. Weber appeals from the order denying the motion for a new trial and the evidentiary rulings at trial and also raises claims of ineffective assistance of counsel (IAC).

## STANDARDS OF REVIEW

¶11 We review a district court's evidentiary decisions for an abuse of discretion. *State v. Pingree*, 2015 MT 187, ¶ 9, 379 Mont. 521, 352 P.3d 1086 (citation omitted). "Whether a proper foundation has been laid for the introduction of exhibits into evidence rests with the trial court and its determination will not be overturned on appeal unless there is a clear abuse of discretion." *State v. Fox*, 212 Mont. 488, 491, 689 P.2d 252, 254 (1984) (citation omitted). We review claims of ineffective assistance of counsel on direct appeal according to the *Strickland* standard. *Hagen v. State*, 1999 MT 8, ¶ 10, 293 Mont. 60, 973 P.2d 233 (citing *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052). Claims of ineffective assistance of counsel are mixed questions of law and fact which this Court reviews de novo. *State v. Greene*, 2015 MT 1, ¶ 11, 378 Mont. 1, 340 P.3d 551.

**DISCUSSION**

¶12    *1. Whether the District Court abused its discretion by refusing to admit the inventory list offered by defense counsel.*

¶13    Weber argues that the District Court abused its discretion when it refused to admit the inventory list because authentication was satisfied by the testimony of defense witness Fulgham. The State argues that the District Court's determination to exclude the inventory list was correct because Fulgham did not create the inventory list and did not have specific knowledge about the date of acquisition of the plasma cutter.

¶14    The District Court denied admission of the inventory list because Weber's counsel did not lay proper foundation. Weber's counsel, in three distinct attempts, began to establish foundation for the list's admission as a business record, but prior to establishing proper foundation he switched to asking questions directed at the contents of the list. Each time counsel directed questions at the content, the State objected and the District Court sustained. The District Court provided Weber's counsel advice and encouragement for how he might get the record admitted, but counsel still failed to lay proper foundation. After the three attempts, Weber's counsel moved on.

¶15    Hearsay is a statement, other than one made by the declarant while testifying at a trial or hearing, offered in evidence to prove the truth of the matter asserted. M. R. Evid. 801(c). Hearsay is not admissible unless it meets a statutory or regulatory exception. M. R. Evid. 802; *Apple Park, L.L.C. v. Apple Park Condos., L.L.C.*, 2008 MT 284, ¶ 18, 345 Mont. 359, 192 P.3d 232. A statutory exception for hearsay exists for "[records] of regularly conducted activity" otherwise known as the business records exception.

M. R. Evid. 803(6). Business records are admissible hearsay when the records are presented for admission with proper foundation. M. R. Evid. 803(6). In Weber's case, the inventory list was likely admissible under multiple hearsay exceptions and was clearly admissible as a business record. To lay proper foundation, Weber's counsel could have, as the District Court suggested, asked Fulgham what the list was and how Fulgham used it. Instead, the record shows that he repeatedly asked questions directed at the specific content of the list. Weber's counsel was not properly prepared and the District Court did not abuse its discretion in denying admission of the inventory list. Counsel failed to lay foundation for the admission of the inventory list before he began asking questions about its content.

¶16    2. *Whether the District Court abused its discretion by limiting defense counsel's examination of defense investigator Peck.*

¶17    The District Court sustained hearsay objections regarding testimony from Richard Peck, investigator for the Office of Public Defender, about the contents of the inventory list and hearsay and foundation objections regarding Peck's internet search to determine the value of the plasma cutter. Weber argues that the District Court erred when it prohibited Peck from discussing estimates of the plasma cutter's value. The State argues that Weber's counsel asked Peck questions that were objected to and sustained on hearsay and foundation grounds, yet there is nothing in the record to indicate that the District Court prohibited counsel from pursuing the admission of the evidence except for the hearsay objection at the outset of Peck's testimony.

8

¶18 Trial counsel's failure to gain the admission of Peck's testimony stems from the failure to lay foundation for Peck's investigation and his conclusions about the value of the plasma cutter. Similar to the mistakes made regarding the inventory list, counsel's questions jumped directly to the content and final conclusion on value. The District Court properly sustained the objections to Peck's testimony because Weber's counsel failed to establish a foundation for Peck's conclusions. There is nothing in the record that indicates the District Court stopped or prohibited Weber's counsel from inquiring further into the topics or from introducing the evidence by other means. The District Court's evidentiary rulings in regard to Peck's testimony were not an abuse of the court's discretion.

¶19 *3. Whether defense counsel rendered ineffective assistance of counsel by failing to admit the evidence.*

¶20 Weber argues alternatively on appeal that Weber's counsel rendered IAC by failing to properly prepare and investigate the inventory list and by failing to prepare to question his investigator on the estimated price of the plasma cutter. The State argues that Weber's IAC claim is not appropriate for direct appeal and should be dismissed. Specifically, the State argues that Weber's claims do not meet the narrow "no plausible justification" exception for IAC claims on direct appeal.

¶21 The United States and Montana Constitutions guarantee criminal defendants the right to effective counsel. U.S. Const. amend VI; Mont. Const. art. II, § 24; *Greene*, ¶ 16 (citing *State* v. *Racz*, 2007 MT 244, ¶ 22, 339 Mont. 218, 168 P.3d 685). We apply the two-pronged test of *Strickland* to claims of ineffective assistance of counsel. *Greene*,

¶ 16. Under *Strickland,* a defendant must prove "(1) that counsel's performance was deficient, and (2) that counsel's deficient performance prejudiced the defense." *Greene,* ¶ 16.

¶22 As a threshold matter, the Court must determine whether Weber's claim of IAC may be reviewed on direct appeal. The nature of IAC involves fact-dependent considerations that usually can only be reviewed by reference to a developed record. *Greene,* ¶ 17. Thus, the Court must determine whether a direct appeal or a post-conviction relief hearing is the more appropriate forum for the claim. *State v. Kougl,* 2004 MT 243, ¶¶ 14-15, 323 Mont. 6, 97 P.3d 1095. "If we can discern from the record the reason for counsel's allegedly deficient act or omission, we can properly address the claim on direct appeal. If, on the other hand, the record does not disclose the reason, the defendant must raise the claim in a petition for postconviction relief." *Greene,* ¶ 17 (citing *Kougl,* ¶ 14). This Court has also recognized a narrow exception to the direct appeal rule when there is "no plausible justification" for counsel's acts or omissions. *Greene,* ¶ 18 (citing *Kougl,* ¶ 15). If there is no plausible justification for the mistake, the record does not need to disclose counsel's reasons for the act or omission and we will review the claim on direct appeal. *Greene,* ¶ 18 (citing *Kougl,* ¶ 15).

¶23 Weber argues on appeal that there is no plausible justification for his trial counsel's errors when counsel attempted and failed to lay foundation for admissible evidence. The State responds that the record does not disclose the reasons for trial counsel's failures and that the "no plausible justification" exception does not apply.

10

¶24 We conclude for two reasons that there is "no plausible justification" for Weber's counsel's mistakes. First, Weber's counsel failed to lay proper foundation for admission of a document that was a business record admissible under M. R. Evid. 803(6). The inventory list would have established the age of the plasma cutter and that the high school's own valuation of the tool was $1,500. Even with the District Court's attempts to lend a hand, Weber's counsel failed to get the inventory list admitted because he repeatedly made the same mistake and also failed to recognize there were several other paths for admission of the list. From the record, it is evident that trial counsel's struggles started when he discovered, at trial, that Mr. Fulgham had been employed at Sidney High School for only three weeks when the plasma cutter disappeared. Until the day of trial, Weber's counsel apparently did not know that Fulgham was not the author of the list. Thus, his plan to use Fulgham as the "author" to authenticate the list failed.

¶25 If Weber's counsel had made a complete investigation of the facts of Weber's case prior to trial, he would have discovered that Mr. Schaff was the author of the inventory list, and could have sought admission of the inventory through his testimony. Trial counsel's actions reflect a failure to properly investigate the facts of Weber's case and to prepare for the admission of evidence. In our view, there is no plausible justification for this failure as there were at least two methods available for introduction of the list. We conclude that trial counsel's failure to gain admission of the inventory list falls outside of the "wide range of reasonable professional assistance" provided for under *Strickland* because he arrived at trial factually unprepared and uninformed regarding the inventory list and the manner in which to lay foundation for admission of the list. *Strickland*, 466

11

U.S. at 689, 104 S. Ct. at 2065; *State v. Hamilton*, 2007 MT 223, ¶ 16, 339 Mont. 92, 167 P.3d 906.

¶26 Weber's counsel's second failure is closely related to the first because it involves his general failure to establish a "used" or market value for the plasma cutter, leaving the State's replacement value of $2,100 more or less unchallenged. Weber's counsel missed the opportunity to establish a lesser-used value for the plasma cutter when he stopped questioning Peck after several hearsay objections. Counsel asked questions directed at the inventory list, about what a plasma cutter looks like, how old it may have been, and whether Peck had done a price estimate for the plasma cutter. Counsel jumped around with these questions without providing foundation, including Peck's investigation of the plasma cutter value. After the court sustained several objections, Weber's counsel moved on to other topics. Foundation for this type of evidence was demonstrated by the State during its case-in-chief. There, the State laid foundation for its valuation by asking Fulgham what the process was for purchasing a new plasma cutter, what quotes he received for replacement, where to purchase the tool, and then, that the school paid $2,100 for a new plasma cutter.

¶27 Trial counsel's attempts at admission of the valuation evidence do not reflect a plan or strategy that might have provided a path to admission of the defense valuation. While we note that there are many ways this evidence could be admitted, the final result is that Weber's counsel failed to provide foundation for the testimony and failed to get any valuation evidence admitted. This valuation evidence was, barring an acquittal for Weber, the key to Weber's defense. Under § 45-6-301(8)(a), MCA, "value" is a key

12

element in the determination of punishment for the crime where an amount not exceeding $1,500 is misdemeanor rather than felony theft. Section 45-2-101(77)(a), MCA, defines value as follows: "'Value' means the market value of the property at the time and place of the crime or, if the market value cannot be satisfactorily ascertained, the cost of the replacement of the property within a reasonable time after the crime." There was no evidence at trial that the market value could not be ascertained and no market value was established by trial counsel. The final result of a market valuation at or below $1,500 for the plasma cutter, which is reflected on the high school inventory list, may have resulted in a misdemeanor conviction for Weber. We conclude there is no plausible justification for counsel's failure to establish a key element of Weber's defense, the market value of the plasma cutter, when the evidence was available to Weber.

¶28 Under the first prong of *Strickland* we conclude that Weber's counsel rendered ineffective assistance of counsel because he failed to properly prepare for introduction of the inventory list and failed to properly prepare to question his investigator on the estimated price of the plasma cutter.

¶29 Under the second prong of the *Strickland* test, a defendant must show that he was prejudiced by counsel's deficient performance. *State v Lamere*, 2005 MT 118, ¶ 22, 327 Mont. 115, 112 P.3d 1005.

> An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment. The purpose of the Sixth Amendment guarantee of counsel is to ensure that a defendant has the assistance necessary to justify reliance on the outcome of the proceeding. Accordingly, any deficiencies in counsel's performance must be prejudicial to the defense in order to constitute ineffective assistance under the Constitution."

13

*Strickland*, 466 U.S. at 691-92, 104 S. Ct. at 2066-67 (internal citation omitted); *Lamere*, ¶ 22. Under this prejudice prong of *Strickland*, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Heavygun v. State*, 2016 MT 66, ¶ 11, 383 Mont. 28, 368 P.3d 707 (citing *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068).

¶30 Weber asserts that he suffered prejudice because his counsel's failures deprived him of the opportunity to establish a lesser value at or less than $1,500, which would result in misdemeanor penalties under § 45-6-301(8)(a), MCA. Weber argues this prejudice is significant as the higher valuation of the plasma cutter caused him a possible sentence of 10 years instead of 6 months, and maximum fine of $5,000 instead of $1,500, along with the standard loss of rights associated with a felony conviction. We agree with Weber that his trial counsel's failures have prejudiced his right to a fair trial.

¶31 We conclude that Weber has demonstrated a reasonable probability that, but for trial counsel's deficient performance, the result of the proceeding would have been different. Weber has shown there is a probability that, given the benefit of the lesser valuation of the plasma cutter, Weber may have been convicted of a lesser crime of misdemeanor theft, rather than the felony conviction he received under trial counsel's deficient performance.

14

**CONCLUSION**

¶32    Weber's trial counsel's performance was deficient.  As a result, his right to a fair trial was prejudiced because he did not have the benefit of all the evidence in his favor at trial.  Because Weber's rights were prejudiced, we reverse and remand for a new trial.

/S/ MICHAEL E WHEAT

We Concur:

/S/ MIKE McGRATH
/S/ JIM RICE
/S/ BETH BAKER
/S/ PATRICIA COTTER