FILED

11/18/2025

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 23-0604

DA 23-0604

IN THE SUPREME COURT OF THE STATE OF MONTANA

2025 MT 265N

STATE OF MONTANA,

     Plaintiff and Appellee,

  v.

BOBBY FRANCIS LOWRY,

     Defendant and Appellant.

APPEAL FROM:   District Court of the First Judicial District,
In and For the County of Lewis and Clark, Cause No. BDC 2021-537
Honorable Michael F. McMahon, Presiding Judge

COUNSEL OF RECORD:

     For Appellant:

         James C. Murnion, Murnion Law, Missoula, Montana

     For Appellee:

         Austin Knudsen, Montana Attorney General, Selene Koepke, Assistant Attorney General, Helena, Montana

         Kevin Downs, Lewis and Clark County Attorney, Ann Penner, Deputy County Attorney, Helena, Montana

Submitted on Briefs:  September 3, 2025

Decided:  November 18, 2025

Filed:

_____
Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 Bobby Lowry (Lowry) appeals his jury conviction of accountability for aggravated assault in the First Judicial District Court, Lewis and Clark County, challenging statements made by the prosecutor during closing argument as plain error, and claiming he received ineffective assistance of counsel (IAC). We affirm.

¶3 On October 26, 2021, at Lewis and Clark County Detention Center, S.H. was cleaning his cell when four fellow inmates entered his cell in "Pod 3" and attacked him, calling him a "snitch." S.H. ended up beneath his bunkbed, where he was knocked unconscious. He awoke underneath his bed covered in his own blood and stool. His nose and several lower-back vertebrae were broken. After he came to, S.H. cleaned himself and reported to detention officers that he had fallen, fearing retaliation from the inmates if he reported the attack.

¶4 Following an investigation, the State identified Kaleb Verley, Garret Hamilton, Wesley Rhodes, and Lowry as the assailants. The State initially charged Lowry with aggravated assault, but prior to trial amended the Information to include accountability for aggravated assault as an alternative charge against Lowry. Verley, Hamilton, and Rhodes all pled guilty to aggravated assault or accountability therefor, and were compelled to

2

testify against Lowry under a grant of use immunity. At trial, each of the three men gave conflicting testimony. Verley testified that he had attacked S.H. alone. Rhodes testified that there was a plan to attack S.H. with the other inmates, although Rhodes said he did not see Lowry assault S.H. Hamilton testified that he did not remember Lowry being present during the assault. S.H. testified that Lowry, Verley, Rhodes, and Hamilton "all attacked" him. S.H. was unable to specifically correlate the assaultive actions taken against him to each assailant during the time he was under his bunk: the bed blocked his view of each assailant's face and differentiating between each assailant based on visible lower portions, like shoes or pants, was inconclusive as each assailant was wearing the same jail-issued attire.

¶5     Detention Officer Ball was the first to make contact with S.H. after the assault and testified that he saw S.H. with a bloody face and back and walking with a limp. Officer Ball requested assistance from a nurse and moved S.H. to be ready for transport to the hospital. Officer Ball testified about the layout of Pod 3 and the location of S.H.'s cell and security cameras within the pod. Officer Ball explained that the security cameras could view only halfway into S.H.'s cell due to their location relative to the entrance of the cell. Officer Ball also explained that each pod has an emergency call button and a "kiosk," a media center where an inmate can make requests to the detention center and check their messages.

¶6     Deputy Sheriff Blair led the investigation into the incident. He testified as follows regarding the Detention Center's surveillance video:

3

[PROSECUTOR]: As part of your investigation, did you review any footage of Pod 3?

[DEPUTY BLAIR]: I did.

[PROSECUTOR]: And did you see Mr. Lowry in that video?

[DEPUTY BLAIR]: Yes, ma'am, I did.

[PROSECUTOR]: Okay. Were you able to get a copy of that footage?

[DEPUTY BLAIR]: Yes, I was.

[PROSECUTOR]: Okay. Sorry. When you -- When you obtained a copy of that footage from the jail, did you make any edits to it?

[DEPUTY BLAIR]: I did not.

[PROSECUTOR]: Okay. And what did you do with that footage once you got it from that jail control room?

[DEPUTY BLAIR]: I entered [sic] into the WatchGuard Evidence Library.

[PROSECUTOR]: Okay. So, Your Honor, if I may approach the witness?

[DISTRICT COURT]: Certainly.

[PROSECUTOR]: I am showing you what I am going to mark as State's Exhibit 3. Based on the description, do you recognize that video?

[DEPUTY BLAIR]: Yes, ma'am.

[PROSECUTOR]: And do you believe viewing of the video would help the jury to determine the facts of what happened on that day?

[DEPUTY BLAIR]: Yes, I do.

[PROSECUTOR]: So, Your Honor, I would move to admit State's Exhibit 3.

[DISTRICT COURT]: Any objection?

[LOWRY'S TRIAL ATTORNEY]: No objection.

4

[DISTRICT COURT]: Exhibit 3 is admitted.

¶7 While the surveillance video was being played for the jury, Deputy Blair identified each of the four assailants as they entered S.H.'s cell during the time of the assault. Due to the security camera's angle of view and its location relative to the cell, the video did not capture the assault directly. The video showed Lowry leaving S.H.'s cell during the assault, checking the pod's kiosk, and shortly thereafter re-entering the cell. Deputy Blair testified that, during his investigation, he "zoomed in" on the portion of the video when Lowry was at the kiosk and determined that Lowry was scrolling through his electronic messages rather than reporting the assault or making a medical request. The zoom-in feature was not available on the video as played at trial.

¶8 Lowry testified in his defense, stating that he did not assault S.H. and did not participate in any plan to assault S.H. The jury found Lowry not guilty of aggravated assault but found him guilty of accountability for aggravated assault.

¶9 After the trial, Lowry moved for a mistrial, arguing that he was "denied a fair trial because the jury viewed [him] in handcuffs for an undetermined amount of time outside the courtroom" when Lowry was being escorted from the jail into the courthouse. The District Court conducted a hearing on the mistrial motion, and Lowry played courthouse surveillance video taken during his trial. The video showed Lowry being escorted, with his hands apparently in handcuffs behind him, down a hall adjacent to a room where prospective jurors were gathering. Lowry claimed the door to the prospective juror meeting room was open and that potential jurors could see him walking down the hallway in handcuffs before a security guard closed the door. He acknowledged that the

5

surveillance cameras did not capture his handcuffs but stated that he "believe[d] that prospective jurors sitting against the opposite wall in the main room could see his handcuffs." In opposition, the State argued that the video illustrated that "Lowry was not placed into handcuffs within the confines of the courtroom" and that, "when Lowry both entered and exited the courtroom during trial, he was not physically in handcuffs." The District Court denied the motion, reasoning that "Lowry has failed to demonstrate actual prejudice if, as he speculates, prospective jurors observed him momentarily in handcuffs outside of the courtroom in the third floor back hallway." Lowry appeals, challenging two statements made by the prosecutor as plain error, and claiming his trial counsel rendered IAC.

¶10 "We generally 'do not address issues of prosecutorial misconduct pertaining to a prosecutor's statements not objected to at trial.'" *State v. Aker*, 2013 MT 253, ¶ 21, 371 Mont. 491, 310 P.3d 506 (quoting *State v. Longfellow*, 2008 MT 343, ¶ 24, 346 Mont. 286, 194 P.3d 694). However, "we may review such issues under the plain error doctrine." *State v. Mercier*, 2021 MT 12, ¶ 13, 403 Mont. 34, 479 P.3d 967.

¶11 "Only record-based ineffective assistance of counsel claims are considered on direct appeal." *Aker*, ¶ 22. To the extent such claims are reviewable, they present mixed questions of law and fact that we review de novo. *State v. Howard*, 2011 MT 246, ¶ 18, 362 Mont. 196, 265 P.3d 606. We review claims of ineffective assistance of counsel according to the *Strickland* standard. *State v. Weber*, 2016 MT 138, ¶ 11, 383 Mont. 506, 373 P.3d 26 (citation omitted).

¶12 Lowry contends that the prosecutor twice improperly offered her personal belief that he was guilty and thus committed misconduct. Lowry challenges the prosecutor's statement in the early part of her closing argument, as highlighted:

> The State has charged Bobby Lowry with aggravated assault, or in the alternative, accountability for aggravated assault. *This means that the State believes that Bobby Lowry either committed the offense personally against [S.H.] or, at the very least, he aided and abetted others in committing this beatdown against [S.H.].* The judge just read you a real long list of instructions, and you will obviously be permitted to take those back with you during deliberations. But let's talk about some of the applicable law that you are going to have to discuss when you go back to the jury room. Let's talk about the elements of aggravated assault. That's Instruction 18.

(Emphasis added.) Lowry also challenges the following statement, occurring later in the prosecutor's closing argument:

> But what the State would tell you is this: We didn't charge Mr. Lowry because he was there, we charged Mr. Lowry because, *upon review of the evidence, the State firmly believes that Mr. Lowry, number one, knew what was going on, and, number two, made every attempt he could to assist it, or, in the alternative, that, number three, as [S.H.] testified, Mr. Lowry assaulted [S.H.] himself.*

(Emphasis added.) Immediately prior to this statement, the prosecutor had stated: "I understand the judge's instructions and, obviously, No. 23[1] that Mr. Lowry's mere presence in the pod is not enough to convict him of accountability to aggravated assault." On appeal, Lowry acknowledges that no objections were made to these comments and therefore asks the Court to undertake plain error review to preserve the fundamental fairness of the proceeding, as these comments "invade[d] the province of the jury." Lowry

---

[1] Jury Instruction No. 23 provided a mere presence instruction, reciting: "The Defendant's mere presence at the scene of the charged offenses is an insufficient basis upon which to find him guilty of any offense for which the Defendant is here on trial."

7

likens his case to cases where we invoked plain error review for prosecutorial misconduct: *State v. French*, 2018 MT 289, 393 Mont. 364, 431 P.3d 332; *State v. Stringer*, 271 Mont. 367, 897 P.2d 1063 (1995); and *State v. Musgrove*, 178 Mont. 162, 582 P.2d 1246 (1978).

¶13 "The purpose of plain error review is to correct an otherwise objectionable error not objected to at trial that impacts the 'fairness, integrity, and public reputation of judicial proceedings.'" *Mercier,* ¶ 35 (quoting *State v. Lawrence*, 2016 MT 346, ¶ 9, 386 Mont. 86, 385 P.3d 968). Invoking the plain error doctrine is discretionary and may be exercised in situations that "implicate a defendant's fundamental constitutional rights when failing to review the alleged error may result in a manifest miscarriage of justice, leave unsettled the question of the fundamental fairness of the proceedings, or compromise the integrity of the judicial process." *State v. Hayden*, 2008 MT 274, ¶ 17, 345 Mont. 252, 190 P.3d 1091. "[W]e employ the doctrine sparingly, on a case-by-case basis, considering the totality of circumstances of each case," and, accordingly, "[t]he party requesting reversal because of plain error bears the burden of firmly convincing this Court that the claimed error" implicates review under the doctrine. *State v. Bryson*, 2024 MT 315, ¶ 24, 419 Mont. 490, 560 P.3d 1270 (internal citation omitted).

¶14 "Prosecutorial misconduct calls for reversible error if it prejudices a defendant's substantial rights." *Mercier*, ¶ 37. A prosecutor generally may not "express a direct personal opinion or belief that the accused is guilty or the one who committed the charged offense." *State v. Miller*, 2022 MT 92, ¶ 24, 408 Mont. 316, 510 P.3d 17; *see also* M. R. Pro. Cond. 3.4(e) ("A lawyer shall not . . . in trial . . . state a personal opinion as to the . . . guilt or innocence of an accused[.]"). A prosecutor "may appropriately comment

8

on 'the gravity of the crime charged, the volume of evidence, credibility of witnesses, inferences to be drawn from various phases of evidence, and legal principles involved.'" *Mercier*, ¶ 37 (citation omitted). Alleged improper comments are reviewed "in the context of the entire argument." *State v. McDonald*, 2013 MT 97, ¶ 14, 369 Mont. 483, 299 P.3d 799.

¶15    In the context of the prosecutor's full argument, the statements are akin to summaries of the particular charges against Lowry and the reasons the State filed the charges in the manner it did, rather than statements of the prosecutor's personal belief that Lowry was guilty. The first statement was made during an explanation of what charges Lowry faced and the elements for each crime. The second statement was made within a discussion of the legal principles related to the accountability charge and the mere presence jury instruction, and what "the state believe[d]" was supported by the evidence. Neither statement conveyed the prosecutor's own personal opinion. In contrast, the plain error cases relied upon by Lowry all involved flagrantly improper statements. *See French*, ¶ 22 (the prosecutor informed the jury that the defendant had previously been convicted of the same charges in an earlier trial); *Stringer*, 271 Mont. at 379, 897 P.2d at 1071 (the prosecutor called the defense witnesses "liars"); *Musgrove*, 178 Mont. at 171, 582 P.2d at 1252 (The prosecutor called the defendant a liar and commented on his guilt: "I'm convinced that Musgrove is a liar and he is responsible."). These cases are plainly distinguishable.

¶16    A prosecutor, "based on the evidence, applicable law as stated in the jury instructions, and his or her *analysis of the evidence*, . . . may properly comment on and

9

argue for any position or conclusion regarding the nature, quality, or effect of the evidence in relation to the applicable law and the prosecutor's burden of proof." *Miller*, ¶ 22 (internal quotations omitted) (emphasis in original). Having reviewed the trial transcript and considered the challenged statements in context, we conclude that Lowry's right to a fair trial was not undermined by the prosecutor's closing argument and that exercise of plain error review is not necessary to preserve "the fundamental fairness of the proceedings." *Hayden*, ¶ 17.

¶17    Further, Lowry contends he received IAC at trial because defense counsel failed to object to the challenged statements made by the prosecutor during closing arguments discussed above, the admission of a surveillance video for lacking authentication, and assertedly prejudicial testimony by Officer Blair about the video. He also contends that defense counsel was ineffective for failing to immediately move for a mistrial after Lowry told counsel that potential jurors may have seen him in handcuffs.

¶18    The United States and Montana Constitutions guarantee criminal defendants the right to effective counsel. *State v. Weber*, 2016 MT 138, ¶ 21, 383 Mont. 506, 373 P.3d 26. We have adopted the two-part test articulated by the United States Supreme Court in *Strickland v. Washington,* 466 U.S. 668, 104 S. Ct. 2052 (1984). *Whitlow v. State*, 2008 MT 140, ¶ 10, 343 Mont. 90, 183 P.3d 861. To demonstrate IAC, "a defendant must prove both that (1) counsel's performance was deficient, and (2) counsel's deficient performance prejudiced the defense." *State v. Ward*, 2020 MT 36, ¶ 18, 399 Mont. 16, 457 P.3d 955. "Failure of either prong is fatal to an IAC claim." *State v. Edwards*, 2011 MT 210, ¶ 22, 361 Mont. 478, 260 P.3d 396. There is a "strong presumption that

10

counsel's conduct falls within the wide range of reasonable professional assistance." *Whitlow*, ¶ 21. Because the record here illustrates that defense counsel either did not perform deficiently or that Lowry was not prejudiced by counsel's actions, we address the IAC claims on appeal.

¶19 Regarding the prosecutor's statements, we have determined above that they did not rise to error that undermined the fairness of the proceedings, such that plain error review was necessary, and we likewise conclude, for purposes of the second prong of the *Strickland* test, that Lowry was not prejudiced thereby. *See Heddings v. State*, 2011 MT 228, ¶ 33, 362 Mont. 90, 265 P.3d 600 ("[A] claim of constitutionally ineffective assistance of counsel will not succeed when predicated upon counsel's failure to make motions or objections which, under the circumstances, would have been frivolous, which would have been, arguably, without procedural or substantive merit, or which, otherwise, would likely not have changed the outcome of the proceeding.").

¶20 Lowry also claims his defense counsel rendered IAC by failing to object to admission of the surveillance video when the State moved for its admission during Deputy Blair's testimony, despite the insufficiency of Deputy Blair's testimony to authenticate the video. Further, Lowry claims IAC when counsel did not object to Deputy Blair's testimony where he identified Lowry in the surveillance video and referenced "zooming in" to view what Lowry was doing at the kiosk during his investigation, when the zoom-in function was not available on the trial version of the video.

¶21 Video evidence can be properly authenticated when a trial court is "satisfied by evidence sufficient to support a finding that the matter in question is what its proponent

11

claims." M. R. Evid. 901(a). A trial court judge has wide discretion in determining the adequacy of foundation for the admission of evidence. *City of Missoula v. Forest*, 236 Mont. 129, 134, 769 P.2d 699, 702 (1989). Lowry notes that Deputy Blair's testimony did not discuss how the video was made or that he had personal knowledge of the accuracy of its contents. Rather, Deputy Blair discussed how he obtained the video. Other foundation was laid when Officer Ball testified that he was familiar with the jail's cameras and their location and explained the field of view for each camera. Deputy Blair added that he reviewed the jail video and did not edit it.

¶22 Further testimony is necessary from a witness to expressly authenticate that a jail video is a true and accurate depiction of the jail's interior, such that it is "what it is claimed to be." *See* M. R. Evid. 901(b)(1); *State v. High Elk*, 2006 MT 6, ¶ 35, 330 Mont. 259, 127 P.3d 432 (officer's testimony that photographs "were true and accurate depictions of the wounds he observed" on the defendant "was sufficient to authenticate the photographs"). Notably, the video was the central evidence of the State's case, and had there been an objection, the District Court could have required additional foundational testimony. However, the State had witnesses available who could have provided it. Under these circumstances, it is clear that an objection by defense counsel, even if sustained, would not have affected the ultimate outcome of the proceeding and, as such, was not prejudicial to Lowry. Lowry faults defense counsel for failing to object to Deputy Blair's testimony about his "zooming in" of the video to view Lowry's actions at the kiosk and testifying about what "it appeared" Lowry was doing at the kiosk, when that feature was not available at trial. Again, such an objection may have prompted further inquiry into

12

whether the video was the appropriate version, M. R. Evid. 1002, and whether that version could be provided, but Deputy Blair was nonetheless permitted to testify about his observations, and we cannot conclude such an objection, if made, would have affected the outcome of the trial.

¶23 Lowry's IAC claim regarding his appearance in the hallway with handcuffs is premised upon defense counsel's failure to move for a mistrial earlier, such that the potential jurors could have clarified whether they had seen Lowry in handcuffs. However, even if potential jurors had seen him in handcuffs, the "right to be free of shackles during trial need not be extended to the right to be free of shackles while being taken back and forth between the courthouse and the jail." *Porter v. State*, 2002 MT 319, ¶ 28, 313 Mont. 149, 60 P.3d 951 (quoting *State v. Baugh*, 174 Mont. 456, 462-63, 571 P.2d 779, 782-83 (1977)). As we explained in *Baugh*, a defendant is not entitled to a mistrial solely because he was momentarily or inadvertently seen in handcuffs by a juror. *Baugh*, 174 Mont. at 463, 571 P.2d at 783. We have consistently held that in the absence of evidence indicating prejudicial consequences, a jury momentarily and inadvertently observing a defendant in restraints does not warrant a mistrial. *Compare State v. Pendergrass*, 189 Mont. 127, 134, 615 P.2d 201, 205 (1980) (affirming no prejudicial consequences when the jury saw the defendant handcuffed outside the courtroom), *State v. Schatz*, 194 Mont. 59, 63, 634 P.2d 1193, 1196 (1981) (affirming no prejudicial consequences when some members of the jury saw defendant leaving the court house in handcuffs), *and Porter*, ¶ 31 (affirming no prejudicial consequences when defendant momentarily wore handcuffs in front of a group of potential jurors) *with Rhoden v. Rowland*, 172 F.3d 633, 636 (9th Cir. 1999) (granting

13

habeas relief when the defendant was shackled in view of the jury for the duration of the trial).  Consequently, the District Court's order, which denied the motion based upon the assumption that potential jurors had briefly observed Lowry in handcuffs, was correct, and no prejudice was sustained by Lowry.

¶24    For the reasons discussed herein, we conclude on this record that Lowry's IAC claims are without merit.

¶25    We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions.  In the opinion of the Court, the case presents questions controlled by settled law or by the clear application of applicable standards of review.

¶26    Affirmed.


/S/ JIM RICE


We Concur:

/S/ CORY J. SWANSON
/S/ LAURIE McKINNON
/S/ KATHERINE M. BIDEGARAY
/S/ JAMES JEREMIAH SHEA